[No. 27202.   *En Banc.*   September 2, 1939.]

O. J. Blende, *Respondent,* v. Hearst Publications, Inc., *at al., Appellants.*[1]

[1]Reported in 93 P. (2d) 733.

*Tanner & Garvin,* for appellants.

*Stevenson & Gershon,* for respondent.

SIMPSON, J.—Plaintiff brought this action to recover damages from defendants for publishing an article in the Seattle Post-Intelligencer, a newspaper owned by defendant Hearst Publications, Inc., and of which newspaper defendant Oliver S. Morris was city editor at the time that article was published.

The material allegations of the amended complaint upon which the case was tried may be stated as follows: Sunday, July 19, 1936, the defendant corporation, in writing, maliciously published in each edition of its newspaper a libelous and scandalous story about and concerning the plaintiff, which story appeared in a prominent position, under large headlines, upon the first page of the newspaper. The offending article reads:

"BROKEN NECK KILLS CITY PRISONER

*"Injury Discovered After Man Spent Day in Cell*

"Charles Adolph Dettz, middle-aged machinist, who lay all day in a padded cell at the city jail with a broken neck before attendants discovered his condition to be serious, died yesterday at King County Hospital.

"Dettz was found in the street at Westlake Ave. N. and Prospect St. at 5:30 a. m. Thursday, the coroner's preliminary report showed. He was taken to police headquarters and examined by Dr. Sol Levinson of City Hospital, who said he talked and walked normally, and who diagnosed his case as plain drunkenness.

"In the afternoon Dr. O. J. Blende, another City Hospital physician, examined Dettz and diagnosed his condition as 'alcoholic paralysis' and ordered him removed to King County Hospital.

"Dettz lived at 1526 Belmont Ave.

"County Autopsy Surgeon Gale E. Wilson, after a post-mortem examination, said that Dettz' neck had

been fractured several hours before he was taken to jail."

It is further alleged that the story is false and untrue, in the following particulars: That Dettz (whose true name is Deetz), did not lie all day in a padded cell at the city jail with a broken neck before attendants discovered his condition to be serious; that plaintiff did not diagnose Deetz' condition as "alcoholic paralysis;" that county autopsy surgeon Gale E. Wilson did not, after a post-mortem examination, state that Deetz' neck had been fractured several hours before he was taken to jail; that Deetz never, at any time, had suffered or sustained a broken neck; and that he did not die as a result of such injury.

It is also alleged that, as the proximate result of this publication, plaintiff's good reputation as a practicing physician and surgeon in Seattle and the state of Washington has been, and for a long time to come will continue to be, greatly injured and impaired; and in such professional capacity he has been brought into public hatred, contempt, ridicule, and professional disrepute, thereby suffering damages in the sum of twenty-five thousand dollars.

The defendants answered separately, setting up certain defenses, the statements of which are not necessary to this decision.

The case was tried to a jury, and a verdict returned in favor of plaintiff in the sum of ten thousand dollars. Defendants moved for judgment notwithstanding the verdict, and, without waiving that motion, they moved for a new trial. The court ordered that a new trial would be granted unless plaintiff consented to a reduction of the verdict to five thousand dollars. Plaintiff consented to the reduction, and judgment was entered against defendants in the sum of five thousand dollars, from which judgment they have presented this appeal.

At the close of plaintiff's case, defendants challenged the legal sufficiency of the evidence to establish a cause of action against them. The motion was denied.

The determination of the merit of this assignment necessitates an inquiry into whether the published article is libelous *per se*.

We find it necessary to mention only one assignment of error, inasmuch as the disposition of it is decisive of this case, namely, that the court erred in denying defendants' motions for a directed verdict and for judgment notwithstanding the verdict.

■ The fact that the complaint alleged that the article complained of in this case was published maliciously did not add to the essentials of the complaint. *Wilson v. Sun Pub. Co.*, 85 Wash. 503, 148 Pac. 774, Ann. Cas. 1917B, 442.

■ Whether a writing is libelous *per se* is a question for the court to decide as a matter of law, after considering the article in its entirety, unless the writing is ambiguous, in which event the truth of the innuendo will be submitted to the jury.

"We have stated the answer to be that any publication which falsely charges a person with the commission of a crime or comes with[in] § 2424, Rem. Comp. Stat. [P. C. § 8953], is libelous *per se,* and the determination of whether a given article is libelous *per se* is one for the court to make, and in doing that the article should be read as an entirety and considered in its natural and obvious sense and not extended by the conclusions of the pleader, and the defamatory matter must be certain and apparent from the words themselves." *Graham v. Star Pub. Co.*, 133 Wash. 387, 233 Pac. 625.

Cases of like import are *Urban v. Helmick,* 15 Wash. 155, 45 Pac. 747; *Denney v. Northwestern Credit Ass'n,* 55 Wash. 331, 104 Pac. 769, 25 L. R. A. (N. S.) 1021; *Velikanje v. Millichamp,* 67 Wash. 138, 120 Pac. 876;

*Roane v. Columbian Pub. Co.,* 126 Wash. 416, 218 Pac. 213.

Libel is defined by our criminal statute, Rem. Rev. Stat., § 2424 [P. C. § 8953], in force when the libelous article was published:

"Every malicious publication by writing, printing, picture, effigy, sign or otherwise than by mere speech, which shall tend:

"(1) To expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse; or

. . . . . . . . . . .

"(3) To injure any person, corporation or association of persons in his or their business or occupation, shall be libel. . . ."

In *Wilson v. Sun Pub. Co., supra,* this court approved the following definition of libel that is actionable *per se:*

" 'Unfortunately, the law of libel has been obscured by a mass of technicalities and subtle refinements. When language is used concerning a person or his affairs which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication *prima facie* constitutes a cause of action, and *prima facie* constitutes a wrong, without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication; that this is all that is meant by the term "actionable *per se."* . . . ' *Pratt v. Pioneer-Press Co.,* 35 Minn. 251, 28 N. W. 708."

Among the cases in which we have had occasion to consider the question of whether a certain writing was libelous *per se* are the following: *Denney v. Northwestern Credit Ass'n, supra; Velikanje v. Millichamp, supra; General Market Co. v. Post-Intelligencer Co.,* 96 Wash. 575, 165 Pac. 482; *Magee v. Cohn,* 187 Wash. 157, 59 P. (2d) 1131.

In the much cited case of *Denney v. Northwestern*

*Credit Ass'n, supra,* plaintiff alleged that, because of a report by the credit association, he had been refused credit and injured in his feeling and reputation. In *Velikanje v. Millichamp, supra,* the statement claimed to be libelous charged the plaintiff with having presented forged receipts in order to collect money on them. The published article complained of in *General Market Co. v. Post-Intelligencer Co., supra,* was to the effect that plaintiff, which owned a food market, had tons of food unfit for consumption. In *Magee v. Cohn, supra,* the alleged libelous statement charged the plaintiff, an attorney, with certain errors in the account set forth in the final report in the probate of an estate. In all of these cases, the court held that the published articles were not libelous *per se.* In each of the above cases the article was more far-reaching in implications than the one under consideration.

The cases cited and relied upon by respondent that the published article is libelous *per se* have been examined, but we do not deem them to be controlling here. In addition, we have made an independent search of the cases in which this court has held certain published articles to be libelous *per se,* and we find the present article is materially dissimilar in its general tenor and implications from the articles and documents under consideration in those cases.

It is evident from a consideration of the whole article and its nature and character that the most that can be said is that the respondent made an incomplete diagnosis, in that he did not discover that Deetz was suffering from a fracture dislocation of the neck spine, or, in lay language, a broken neck. There is no intimation that a discovery of the neck ailment before his admission to the hospital would have saved his life. The article was commendatory of respondent's

action in that he was the one individual who recognized that the prisoner was in a serious condition and took the necessary steps to have him removed to a hospital where he might receive additional medical care. The language contained in the writing was not equivocal, and the article was not libelous *per se*.

■ Assuming that the article did charge the respondent with having made a wrong diagnosis, still it would not be libelous *per se*. A physician is only required to possess the ordinary knowledge and skill of his profession and is not liable for mistakes if he uses the methods recognized and approved by those reasonably skilled in the profession.

It is clear that to charge a physician merely with the mismanagement, or the making, of a wrong diagnosis in a particular case, is not, of itself, actionable. Such a charge implies nothing more, at the most, than ignorance or unskillfulness in that case, and does not materially affect his reputation as respects his general competency to practice his profession.

To charge a professional man with negligence or unskillfulness in the management or treatment of an individual case, is no more than to impute to him the mistakes and errors incident to fallible human nature. The most eminent and skillful physician or surgeon may mistake the symptoms of a particular case without detracting from his general professional skill or learning. To say of him, therefore, that he was mistaken in that case would not be calculated to impair the confidence of the community in his general professional competency.

This rule does not apply, of course, to those cases in which the charge of gross misconduct is such as to imply the unfitness of a physician in his profession. 36 C. J. 1187, § 83; Newell, Slander and Libel (4th ed.), 171, § 138; 179, § 146; *Jones v. Diver*, 22 Ind. 184;

*Gauvreau v. Superior Pub. Co.,* 62 Wis. 403, 22 N. W. 726; *Pratt v. Pioneer Press Co.,* 35 Minn. 251, 28 N. W. 708; *Twiggar v. Ossining Printing & Pub. Co.,* 161 App. Div. 718, 146 N. Y. Supp. 529.

■ Since the alleged defamatory publication is not actionable *per se* and the complaint is barren of any allegation of special damages, there remained no question of fact for the jury as to whether the recitals in the published article were true, and thus there can be no recovery. *Denney v. Northwestern Credit Ass'n, supra; Wood v. Star Pub. Co.,* 90 Wash. 85, 155 Pac. 400; and *Magee v. Cohn, supra.*

The judgment is reversed, with instruction to dismiss the action.

STEINERT and ROBINSON, JJ., concur.

JEFFERS, BEALS, and GERAGHTY, JJ., concur in the result.

MAIN, J. (dissenting)—In my opinion, the published article, a copy of which is set out in the majority opinion, was libelous *per se,* and for this reason I dissent.

BLAKE, C. J., concurs with MAIN, J.