**J. D. RAINE, Sr., Movant,**

v.

**George F. DRASIN and Ronald J. Fadel, Respondents.**

**George F. DRASIN and Ronald J. Fadel, Movant,**

v.

**J. D. RAINE, Sr., and James H. Highfield, Respondents.**

Supreme Court of Kentucky.

June 16, 1981.

Ben T. Cooper, Cooper, Kiel & Beale, Louisville, for Raine.

Larry Franklin, Michael R. Hance, Franklin & King, P. S. C., Louisville, for Drasin and Fadel.

John M. Berry, Jr., New Castle, for Highfield.

STEPHENS, Justice.

This appeal involves a malicious prosecution action filed by two physicians against two attorneys who had filed an unsuccessful medical malpractice case against them.

Following a voluntary dismissal of the suit against them, Dr. George F. Drasin and Dr. Ronald J. Fadel filed a malicious prosecution and abuse of process suit against J. D. Raine, Sr., and James H. Highfield, the attorneys who had filed the malpractice suit. The jury returned a verdict which granted each plaintiff $10,000 in compensatory damages, and $15,000 in punitive damages. The trial court dismissed the abuse of process claim against the two attorneys at the outset of the trial.

The attorneys appealed the judgment, and the doctors cross-appealed the dismissal of the abuse of process claim. The Court of Appeals affirmed the award of compensatory damages as against attorney Raine, but reversed the trial court on the award of punitive damages. The Court also ruled, under the facts presented, that the doctors had no claim against attorney Highfield. Finally, the Court affirmed the trial court's ruling that an abuse of process claim was improper.

Raine and the doctors filed motions for discretionary review with this court and because of the importance of the issues raised, we granted both motions.

On July 19, 1975, Robert Browning, a resident of Jefferson County, suffered a massive heart attack at his home. He was taken, unconscious, to Sts. Mary and Elizabeth Hospital. Following treatment in the emergency room, he was examined by Dr. James Fitzpatrick. During his initial examination of Browning, Dr. Fitzpatrick discovered an injury to Browning's shoulder. He ordered X-rays taken which revealed that the shoulder was fractured. Dr. Fitzpatrick then called in Dr. Fadel, an orthopedic surgeon, to treat the shoulder. Dr. Drasin, a radiologist, had read the X-ray but never saw or treated Browning.

Following his release from the hospital, Browning contacted attorney Raine regarding a possible suit for the fracture of his shoulder. On September 15, 1975, Raine visited the hospital and reviewed its records which clearly showed that the fracture of the shoulder occurred before Drs. Drasin and Fadel were involved.

On November 21, 1975, a complaint was filed in the Jefferson Circuit Court against the hospital for allegedly breaking Browning's shoulder. Raine prepared the complaint, but because he represented another hospital he did not wish to sign the complaint. At his request attorney James H. Highfield, a long-time associate of Raine's, with space in his office, signed it. He did so without reading it and without investigating any of the facts. In March of 1976, the attorneys served interrogatories on the hospital, the answers to which revealed that neither doctor was an employee of the hospital and that both doctors were contacted after Browning's shoulder injury was discovered. On May 24, 1976, the deposition of Dr. Fitzpatrick was taken. It is clearly shown that the deponent told the attorneys that the injury occurred before he saw Browning in the emergency room and moreover that, after he discovered the injury, he then called in Drs. Fadel and Drasin. In spite of this clear and cumulative evidence, on July 15, 1976, Raine filed an amended complaint (signed by Highfield), in which the two doctors were joined as parties defendant, and were charged with malpractice in that they negligently broke Browning's shoulder. Highfield did not read the amended complaint.

The doctors contacted their liability insurance carrier, who employed a local attorney. Based on the information given to Raine by this attorney (which apparently was similar if not identical to that already in his possession), he voluntarily entered an order which dismissed the action as against Drs. Drasin and Fadel. The dismissal did not include a compromise or settlement, and was with prejudice.

Subsequent to the dismissal, the doctors filed this suit against both attorneys, alleging both malicious prosecution and abuse of process, and seeking compensatory and pu-

nitive damages. At the trial, no evidence was introduced by the doctors concerning any out-of-pocket expenses. They did testify as to their embarrassment, humiliation, mortification and mental anguish at having been publicly accused of malpractice. Dr. Fadel testified that he suffered an acute anxiety reaction.

Both doctors stated that the malpractice accusation (even though specious), became a permanent part of their professional and insurance records. The attorneys testified that they had no evidence to implicate the doctors. Raine had access to and was aware of this fact even when he filed the malpractice action.

The jury returned to each doctor a verdict of $5,000 for pain and suffering, physical and mental, and $5,000 for humiliation, mortification and loss of reputation as compensatory damages. In addition, each doctor was granted $15,000 in punitive damages. The jury apportioned the total verdict of $50,000 between the defendants; $37,500 against Raine, and $12,500 against Highfield.

On this appeal Raine argues that, (1) the order of dismissal was not a favorable determination of the action, thus eliminating a key ingredient in a malicious prosecution action, (2) that the award of compensatory damages, in the absence of special damages, was improper, (3) the testimony of the doctors was too speculative to justify the damages award, (4) that the testimony of an expert concerning violations of an ethical code was improperly admitted in evidence, and (5) that the instructions which submitted the question of negligence to the jury were erroneous. On the other hand, the doctors argue that (1) the dismissal of the abuse of process claim was improper, (2) the dismissing of the claim against Highfield was improper, and (3) the Court of Appeals erred in reversing the award of punitive damages.

■ The doctrine of malicious prosecution is an old one in our Commonwealth. See, for example, *Holburn v. Neal*, 34 Ky. 120, 4 Dana 120 (1836). Historically, it has not been favored in the law. *Lexington*

*Cab Co. v. Terrell*, 282 Ky. 70, 137 S.W.2d 721 (1940). Public policy requires that all persons be able to freely resort to the courts for redress of a wrong, and the law should and does protect them when they commence a civil or criminal action in good faith and upon reasonable grounds. It is for this reason that one must strictly comply with the prerequisites of maintaining an action for malicious prosecution. *Davis v. Brady*, 218 Ky. 384, 291 S.W. 412 (1927).

■ Generally speaking, there are six basic elements necessary to the maintenance of an action for malicious prosecution, in response to both criminal prosecutions and civil action. They are: (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding. *Smith v. Smith*, 296 Ky. 785, 178 S.W.2d 613 (1944); *Cravens v. Long*, Ky., 257 S.W.2d 548 (1953); *Blankenship v. Staton*, Ky., 348 S.W.2d 925 (1961); *H. S. Leyman Co. v. Short*, 214 Ky. 272, 283 S.W. 96 (1926), Restatement of Torts, 2nd ed., Sec. 674, et seq. With these principles in mind, we will examine the arguments.

I

### IS AN AGREED ORDER OF DISMISSAL A FAVORABLE TERMINATION OF THE MALPRACTICE ACTION?

Shortly after the malpractice action against the doctors was filed, the order of dismissal was filed. It was, by its terms, an "agreed order of dismissal." The order provided that the amended complaint against the doctors was dismissed, with prejudice. It was signed by the plaintiff, Browning, and by his counsel, Raine and Highfield, and by counsel for the doctors. The document did not entail any compromise or settlement; it simply and effectively terminated the lawsuit as far as the defendant doc-

tors were concerned. The dismissal declared, in effect, that there was no malpractice on the part of the defendants.

■ The purpose of this prerequisite to a malicious prosecution suit is to show that the action against the defendant was unsuccessful. The basis for the requirement is that courts will not tolerate inconsistent judgments on the same action between the same parties. 52 Am.Jur.2d, Malpractice, Sec. 29, *Van Arsdale v. Caswell*, Ky., 311 S.W.2d 404 (1958); *Smith v. Kidd*, Ky., 246 S.W.2d 155 (1951). In Kentucky, no particular form of termination in civil actions has been required. Since the order of dismissal effectively terminates the litigation, with respect to the doctors, we agree with the Court of Appeals that the order constituted a favorable termination so as to support this action.

## II

SINCE THERE WAS NO SHOWING OF SPECIAL DAMAGES, WAS THE AWARD OF OTHER COMPENSATORY DAMAGES PROPER? WAS THE TESTIMONY OF THE DOCTORS TOO SPECULATIVE?

As stated, neither doctor proved any special, or out-of-pocket damages. The jury's award of compensatory damages was limited to pain and suffering, mortification and loss of reputation. Raine argues that, under the rule of *Harter v. Lewis Stores, Inc.*, Ky., 240 S.W.2d 86 (1951), no recovery is permitted in this case because the reputation of the doctors had not been "assailed." The Court of Appeals ruled that the allegations of the malpractice complaint were, in effect, libelous per se, and thus actionable under *Harter:*

■ In *Harter*, we said that where the claim was false and its prosecution was prompted by malice and without probable cause, the defendant, in a subsequent malicious prosecution action, "has the right to recovery for expenses incurred *and damages sustained." Id.* at 88 (emphasis added). We also held that if "one's reputation has not been assailed, or he has not been

imprisoned, or his property seized or its use prevented" the damages were limited to loss of time and expenses involved. Conversely, if one's reputation has been "assailed," the defendant is responsible for all damages sustained, in addition to loss of time and expenses incurred. It is clear, in Kentucky, that a plaintiff in a malicious prosecution action may recover for humiliation, mortification and loss of reputation. *Hayes v. Ketron*, 223 Ky. 119, 3 S.W.2d 172 (1928). *Harter, supra.* This view is supported by the Restatement. See, Rest., Torts 2d, Sec. 681.

■ In this case, the allegation of the complaint against the doctors accused them of malpractice in the treatment of Mr. Browning by acting in a "careless and negligent manner." The effect of such an allegation on an individual plaintiff is a subjective one. This is not a libel suit and widespread publication is not necessarily relevant. The jury heard the testimony of the doctors, observed their demeanor, and awarded compensatory damages in the amount of $10,000 each. While we may not agree with the amount, the award is clearly not such that shocks us at first blush. *Fields v. Baker*, Ky., 329 S.W.2d 376 (1959). *Webb Transfer Lines v. Taylor*, Ky., 439 S.W.2d 88 (1969).

■ It is not necessary to decide, as did the Court of Appeals, whether the allegations in the complaint were libelous. The accusation of negligence in the exercise of one's profession certainly can produce mortification, humiliation, injury to the reputation, character and health, mental suffering, and general impairment of social and mercantile standing, all of which are elements of damage in a malicious prosecution action. *H.S. Leyman Co. v. Short*, Ky., 283 S.W. 96 (1926). The award of compensatory damages is affirmed.

## III

WAS THE TESTIMONY OF AN EXPERT CONCERNING THE ATTORNEYS POSSIBLE VIOLATION OF ETHICAL CODE PROPERLY ADMITTED?

■ The deposition of Professor David Leibson, a member of the Ethics Committee

of the Louisville Bar Association, was apparently read to the jury. Professor Leibson stated that, in his opinion, the actions of both Raine and Highfield did not comply with the standard of care for ordinary and prudent lawyers. Raine complains that the admission was improper. We believe that such evidence was properly introduced to show one of the key ingredients of a malicious prosecution action; viz., lack of probable cause. *Hill v. Willmott*, Ky.App., 561 S.W.2d 331 (1978).

## IV

### WERE THE INSTRUCTIONS IMPROPER?

There is a two-pronged attack on the instructions. Movant Raine argues that they are in error because the trial court instructed the jury that the two attorneys owed a duty of ordinary care to the two doctors in their filing of the malicious prosecution action. The Court of Appeals disagreed, but reversed and remanded because if felt that the ordinary care instruction may well have unduly confused the jury in its award of punitive damages.

In instruction No. 1, the trial court did place two duties on the attorneys. It was emphasized, however, that before a recovery could be had by the plaintiff doctors, both duties must be breached. The appropriate section is as follows:

"It was the duty of the defendants . . . in filing the malicious prosecution suit against [the doctors] . . . to know and exercise that degree of care which ordinarily careful, skillful and prudent attorneys know and exercise under circumstances like or similar to those shown in this case.

It was the *further duty* not to institute a legal proceeding against [the doctors] without probable cause and/or to institute such proceedings maliciously.

If you believe from the evidence that the defendants negligently failed to exercise *the duties* imposed upon them . . . you will find for the plaintiffs . . . ." (emphasis added).

Instruction No. 2 defined probable cause. It states that probable cause means such grounds as would induce an attorney of "ordinary prudence" to believe that the person sued for malpractice had committed the act charged. Instruction No. 3 defined malice and stated, properly, that it could be inferred from a lack of probable cause. Instruction No. 4 defined ordinary care as that degree of care that an "ordinarily careful and prudent lawyer" would exercise under the same circumstances.

Instruction No. 5 set out the elements of compensatory damages recoverable by the plaintiff doctors. It was limited to a sum that would "fairly and reasonably" compensate them for any "humiliation or mortification or loss of reputation, and such pain and suffering, mental or physical, as you believe from the evidence they have endured and which is reasonably probable they will endure in the future as the result or (sic) the defendants' acts . . . ."

Instructions Nos. 6 and 7 deal with punitive damages. In No. 6, the jury was told if the conduct of the defendant attorneys was "gross negligence" they could award, in addition to compensatory damages, punitive damages. Gross negligence was defined as "wanton or reckless disregard" or "a willful and malicious" act. Instruction No. 7 defined compensatory damages as "an adequate equivalent of the loss or injury sustained." Punitive damages were defined as "such damages as are given in addition to compensatory damages for a wrong or anything done or inflicted wrongfully upon another."

Raine argues that the instruction No. 1, which, in part, required the attorney to exercise ordinary care was improper under the case of *Hill v. Willmott*, Ky.App., 561 S.W.2d 331 (1978). Raine identifies that case as a malicious prosecution case. It clearly is not a malicious prosecution case. The complaint sounded in negligence, claiming a duty was owed by the plaintiff's attorney to the defendant, prior to filing a malpractice action. The Court of Appeals correctly decided that, as the basis for a negligence action, no such duty existed.

However, the Court pointed out that the attorney's "*alleged failure to investigate the facts and law prior to filing of the suit* (malpractice·action) *would have been material as to the question of 'probable cause' in a malicious prosecution action if such had been pleaded.*" Id., at 335. (emphasis added). *Hill* obviously does not sustain Raine's position but rather corroborates that of the doctors.

The Court of Appeals, using *Hill* as authority, stated that the instruction was improper, but not prejudicial. As we view instruction No. 1, it required two duties of the attorneys: (1) Prior to filing the malpractice action, they should act in the same manner as a prudent attorney, *and* (2) that the suit should not have been filed without probable cause. No recovery can be had by plaintiff doctors unless *both* duties are breached. The prerequisite of probable cause is added to by the requirement of ordinary care. The duty of ordinary care is not "owed" to the defendant doctors in the sense of a negligence case; *Hill, supra,* but rather is owed in establishing probable cause (or a lack thereof). We find neither error nor prejudice to the attorneys. Indeed, if there was a prejudice it was to the doctors.

As stated, the Court of Appeals reversed and remanded the case for a retrial on the question of punitive damages. The court stated that the right of the doctors "not to be prosecuted negligently" (pursuant to instruction No. 1), may well have played a part in the weighing of the "degree of culpability" of the attorneys, and thereby increasing the amount of the punitive damages which the court described as being "not parsimonious." The basis of this ruling was the court's view that instruction No. 1 was improper, and in the matter of punitive damages, was prejudicial.

 As stated, we do not agree that instruction No. 1 was improper. Therefore, we do not agree that any prejudice resulted in Raine. There is no doubt that punitive damages may be awarded in malicious prosecution actions. *W.T. Grant v. Taylor,* 223 Ky. 812, 4 S.W.2d 741 (1928); *Jefferson Dry*

*Goods v. Stoess,* 304 Ky. 73, 199 S.W.2d 994 (1947). In order to justify an award of punitive damages, the evidence must show malice, wilfulness or wanton disregard of the rights of others. *Stamper v. McCally,* 312 Ky. 619, 229 S.W.2d 54 (1950). *W.T. Grant v. Taylor, supra.* Instructions Nos. 6 and 7 stated, if not artfully, accurately, the requirements for an award of punitive damages.

We hold that the instruction was proper.

## V

### WAS THE TRIAL COURT'S DISMISSAL OF THE ABUSE OF PROCESS ACTION PROPER?

 The cause of action for abuse of process has been defined as "the technical designation of the irregular or wrongful employment of a judicial proceeding." *Stoll Oil Refining Co. v. Pierce,* Ky., 337 S.W.2d 263, 266 (1970). The distinction between an action for malicious prosecution and an action for abuse of process is that a malicious prosecution consists in maliciously causing process to be issued, whereas an abuse of process is the employment of legal process for some other purpose other than that which it was intended by the law to effect. Moreover, an action for abuse of process will not lie unless there has been an injury to the person or his property. Injury to name or reputation is not sufficient. 1 Am.Jur.2d, Abuse of Process, Sec. 4; *Flynn v. Songer,* Ky., 399 S.W.2d 491 (1966); *Stoll Oil Refining Co. v. Pierce,* Ky., 337 S.W.2d 263 (1960). The trial court and the Court of Appeals were correct in dismissing that part of the doctors' complaint relating to an alleged abuse of process.

## VI

### WAS THE COURT OF APPEALS CORRECT IN REVERSING THE JUDGMENT AGAINST HIGHFIELD?

 Attorney Highfield, it will be remembered, signed the complaint and amended complaint without reading them. He literally knew nothing about the allega-

tions therein, the parties therein, the factual background or the law. The evidence shows that he was a long-time friend, associate of attorney Raine and has space in Raine's office. Undoubtedly, he signed the documents as a convenience and as a favor to Raine. Even though Highfield signed the pleadings in violation of CR 11, we agree with the Court of Appeals that such action does not constitute malice. At worst it was a breach of ethics, and at least, it was poor judgment on his part.

The only evidence, relative to probable cause and malice against Highfield, is his signing the amended complaint. He was given a plausible reason why Raine did not want to sign the complaint, and based on years of fellowship and association, he signed it. We agree with the Court of Appeals that this is not sufficient evidence, as a matter of law, for a jury to find the necessary malice upon which to base a malicious prosecution action.

### CONCLUSION

The decision of the Court of Appeals affirming the dismissal of the claim for abuse of process is affirmed. The decision of the Court of Appeals reversing the judgment against respondent Highfield is affirmed. The decision of the Court of Appeals affirming the compensatory damages against respondent Raine is affirmed. The decision of the Court of Appeals reversing the award of punitive damages against respondent Raine is reversed.

The case is remanded to the trial court with instructions to enter a judgment in conformity with this opinion.

PALMORE, C. J., and AKER and STEPHENSON, JJ., concur.

STERNBERG, J., did not sit.

LUKOWSKY, J., dissents and submits a separate opinion.

LUKOWSKY, Justice, dissenting.

I concur in Parts V and VI of the majority opinion. However, at that point my brothers and I part company.

A

In deciding this case we do not write on a clean slate. The rule to be applied here was formulated over a century ago by this court in *Woods v. Finnell*, 76 (Bush.) Ky. 628 (1878) and more recently reiterated in *Harter v. Lewis Stores*, Ky., 240 S.W.2d 86 (1951). In *Woods* we said at 76 (Bush.) Ky. 633, 634:

"In cases where the plaintiff has mistaken his action, or been nonsuited, or where, by reason of some imaginary claim, he has seen proper to sue the defendant, it is not pretended that any action for damages can be maintained; but where the claim is not only false, but the action is prompted alone by malice and without any probable cause, the defendant's right of recovery for the expenses incurred and damages sustained should be as fully recognized as if his property had been attached or his body taken charge of by the sheriff.

. . .

It must appear that the action was founded in malice, instituted without probable cause, and that the plaintiff has been damaged.

When the reputation has not been assailed, or the defendant imprisoned, or his property seized, or its use prevented, the damages should be confined to the loss of time, and the reasonable expenses incurred in the defense of the action beyond the ordinary costs."

Drasin and Fadel concede that they have not been imprisoned, that their property has not been seized and that they have not been prevented from using their property. They have neither alleged nor proved that they lost time or expended funds in excess of ordinary costs in defense of the malpractice action brought against them. The damages they seek are based on embarrassment, humiliation, mortification and mental anguish. They may recover such damages only if their reputations have been assailed.

The allegations made against Drasin and Fadel were:

"On July 19, 1975, Plaintiff was admitted to the Defendant hospital as a cardiac patient, and thereafter, the Defendant physicians and each of them, undertook to treat this Plaintiff, and while so treating acting jointly and severally and/or in consort with the agents and servants of the Defendant hospital, performed in such a careless and negligent manner that this Plaintiff was caused to suffer a fracture and dislocation of his left shoulder and other damage to the bones and tissue thereabout, from which the Plaintiff will suffer physical and mental pain and permanent impairment of his power to labor and earn money."

These allegations are no more than a plea of general negligence, which has been proper in Kentucky from time immemorial. Clay, Ky.Prac., 3rd Ed., Civil Rule 8.01, Comment 3. Facts descriptive of negligence are not disclosed. They are left to development by the discovery and trial processes. These allegations are like a Hawaiian muumuu, they cover everything and reveal nothing.

The complaint does not charge a general want of professional knowledge or skill. It does not charge a habitual course of negligent conduct. It does not charge arrant bungling. It is consistent with such relatively innocuous acts of negligence as failure to pull up a bed rail after examination or failure to secure an unattended patient to an X-Ray table. As it happens, the record discloses that the basis for the allegations was Browning's explanation that while he was unconscious and being treated in the hospital he was allowed to fall off a table.

The reputation of a professional person is built of many accomplishments. No single achievement, unless it is of overwhelming significance that evidences extraordinary skill, suffices to establish it. Similarly, a professional's reputation is not irreparably damaged by a single charge of negligence when that charge does not impute a complete lack of skill, habitual negligence or consummate ineptitude.

In *Blende v. Hearst Publications, Inc.*, 200 Wash. 426, 93 P.2d 733, 735 (1939) the Supreme Court of Washington articulated a precise test to determine if reputation has been assailed:

"It is clear that to charge a physician merely with the mismanagement, or the making of a wrong diagnosis in a particular case, is not of itself actionable.... To charge a professional man with negligence or unskillfulness in the management or treatment of an individual case is no more than to impute to him the mistakes and errors incident to fallible human nature. The most eminent and skillful physician or surgeon may mistake the symptoms of a particular case without detracting from his general professional skill or learning."

Eighty years ago in *Manire v. Hubbard*, 110 Ky. 311, 61 S.W. 466, 477 (1901) we indicated that we would apply such a test when we wrote:

"Words which are published in connection with one's profession or calling, which imputes to him ignorance generally in his business or profession, or such ignorance or incapacity as unfits him for its proper exercise, are actionable per se; but it is not ordinarily actionable to charge one in a business or profession with want of skill or ignorance in a particular transaction."

The conclusions are inescapable. The reputation of Drasin and Fadel were not assailed by the allegations of the complaint. The damage limitations of *Woods v. Finnell*, supra, apply. They were not entitled to recovery for mental pain and suffering. They proved no properly recoverable damages. Therefore, a verdict should have been directed against them at the close of their case.

#### B

Three paragraphs of the instructions given by the trial court to the jury in this case are reproduced in Part IV of the majority opinion. They disclose a complete lack of

appreciation for the distinction between an intentional tort, malicious prosecution, and an unintentional tort, professional negligence.

It seems to me that our Court of Appeals correctly recognized a number of principles which are beyond cavil when it decided *Hill v. Willmott*, Ky.App., 561 S.W.2d 331 (1978):

1. Duties imposed on attorneys by the Code of Professional Responsibility and rules of court are for the protection of the public and their violation does not give rise to a private action for civil damages.

2. An attorney who files a medical malpractice suit against a physician owes no duty to the physician to investigate the claim before filing suit.

3. The physician's sole remedy is an action for malicious prosecution which is founded upon an antecedent suit prompted alone by malice *and* without any probable cause.

An examination of the three reproduced paragraphs of the instructions discloses:

1. The first paragraph, which imposes on Raine and Highfield a duty to exercise reasonable professional care toward Drasin and Fadel, is legally incorrect and is completely irrelevant and immaterial to the disposition of this case.

2. The second paragraph permits recovery for malicious prosecution if either malice *or* want of probable cause is shown. This error is achieved by use of the much condemned conjunctive-disjunctive crutch of sloppy thinkers, and/or. See Strunk and White, The Elements of Style 35.

3. The third paragraph permits recovery on the basis of negligent malice. There is no such thing. Malice is an evil or wrongful purpose and this of necessity includes scienter.

The attempt by my brothers to legitimate these paragraphs is at best intellectual sophistry.

This part of the instructions should have read:

You will find for Raine and Highfield unless you are satisfied from the evidence that either, or both, Raine and Highfield commenced the professional negligence suit on behalf of Browning against Drasin and Fadel solely out of malice and without probable cause in which event you will find for Drasin and Fadel against the person or persons so acting.

All further references to ordinary care, negligence and gross negligence should have been omitted. The instructions on damage should have followed the guidelines set forth in *Woods v. Finnell*, supra.

My criticism of the instructions does not end here. They also contain this abstract statement of law which spotlights a permissible inference for the jury:

> "3. 'Malice,' if any, may be inferred from the want or lack of probable cause."

We have repeatedly repudiated the philosophy which would include such materials in instructions. As Chief Justice Palmore said in *Whorton v. Commonwealth*, Ky., 570 S.W.2d 627 (1978):

> "From time immemorial the emphasis with regard to jury instructions in this state has been placed on simplicity. 'The function of instructions in this jurisdiction is only to state what the jury must believe from the evidence . . . in order to return a verdict in favor of the party who bears the burden of proof.' *Webster v. Commonwealth*, Ky., 508 S.W.2d 33, 36 (1974). Thus we have sought to avoid abstract legal principles, presumptions, comments on the weight of the evidence, and references to the burden of proof, which is cast by the form of instruction requiring that in order to make an affirmative finding the jury must, on the basis of the evidence, believe certain specified facts to be true. This approach minimizes the possibility of intrusion by the judge into that particular area of decision-making which belongs exclusively to the jury, and it minimizes the possibility of error in that respect."

And as I put it in my concurrence in that same case at 634:

"The system of instructing juries developed in Kentucky prohibits instructions on presumptions and permissible inferences. The theory is that to avoid undue influence by the trial judge on the fact finding process for or against either party the instructions should simply focus the attention of the jury on those ultimate facts which it must decide in order to reach a verdict. Consequently, the instructions are skeletal in form, given prior to closing argument and leave to the lawyers the task of fleshing them out in closing argument insofar as the evidentiary facts of the case, the weight of the evidence and the credibility of the witnesses are concerned."

The instructions read as a whole are gibberish. Until today, we have never held that the submission of a case to the jury on instructions which compound confusion is not prejudicial. See 1 Palmore, Kentucky Instructions to Juries, Section 1.62.

I would reverse the decision of the Court of Appeals and the judgment of the Jefferson Circuit Court and remand the case to the trial court with directions to grant the motions of Raine and Highfield for a judgment notwithstanding the verdict.