RENDERED: NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1485-MR


CITY OF CAMPBELLSVILLE,
KENTUCKY, AND JEROMY BURRIS                                    APPELLANTS


                    APPEAL FROM TAYLOR CIRCUIT COURT
v.              HONORABLE SAMUEL TODD SPALDING, JUDGE
                         ACTION NO. 17-CI-00339


CHRISTOPHER D. WILLIAMS                                            APPELLEE


                                OPINION
                               AFFIRMING

                          ** ** ** ** **

BEFORE:  COMBS, DIXON, AND MAZE, JUDGES.

DIXON, JUDGE:  The City of Campbellsville, Kentucky, ("City") and Jeromy

Burris appeal the order denying their request for summary judgment against

Christopher D. Williams on his malicious prosecution claims, entered by the

Taylor Circuit Court on September 17, 2019.  After careful review of the briefs,

record, and the law, we affirm.

# FACTS AND PROCEDURAL BACKGROUND

On Friday, November 11, 2016, at 10:35 p.m., Officer Burris of the Campbellsville Police Department ("CPD") was on patrol when he noticed a white Camaro driving on the highway. The CPD had somewhat recently received two complaints about the driver of a white Camaro operating the vehicle in an unsafe manner.[1] According to Officer Burris's testimony, he followed the vehicle for a short period of time, but observing no traffic violations, decided to stop following and began traveling in the opposite direction. The white Camaro also turned around and eventually pulled out in front of Officer Burris. Suspecting this was an evasive driving maneuver, Officer Burris began following the vehicle again and observed it cross the white fog line multiple times within a one-mile stretch of the highway. As a result, Officer Burris initiated a traffic stop.

Officer Burris testified that the identity and race of the driver were unknown to him—it was dark outside and the vehicle's windows were tinted—until he approached during the traffic stop. Officer Burris reviewed the driver's license, which identified the driver as Williams, but Williams was unable to produce an insurance card. Officer Burris informed Williams that the reason for the stop was his repeated crossing of the white line.

---

[1] One of the complaints included a description of Williams' custom license plate: "MyLevl."

Officer Burris asked Williams if he had consumed any alcohol or taken any medication. Williams denied having drunk any alcohol; however, the testimony is conflicting as to whether Williams told Officer Burris that he had taken any medication. Officer Burris observed that Williams' eyes were watery, and he seemed excited, indicating possible stimulant use. Officer Burris did not detect the smell of alcohol but suspected drug use and decided to administer standard field sobriety tests.

Officer Burris asked Williams to step out of his vehicle. He then administered the horizontal gaze nystagmus test—measuring eye twitch—and testified that Williams failed. Officer Burris then attempted to administer the one-leg-stand test; however, Williams refused, citing to a Baker's cyst on his knee. It is disputed whether Officer Burris also administered the walk-and-turn test. Officer Burris testified that Williams refused the test, while Williams testified he performed the test successfully.

The traffic stop lasted several minutes. Officer Burris ultimately determined that probable cause existed to arrest Williams for driving under the influence ("DUI"), and Williams was transported to a local hospital for drug testing. Williams requested an independent blood sample be drawn, which was performed at 11:51 p.m. The results, though not immediately available, eventually reported that Williams was negative for drugs or alcohol. Afterward, Officer

Burris transported Williams to the local detention center where he remained until his release at 12:08 p.m. the following day.

After receiving the results of the blood tests, Williams' charges were amended from DUI to careless driving. After a trial by jury, Williams was acquitted and soon thereafter filed the instant action alleging a myriad of claims. The City and Officer Burris moved the trial court for summary judgment, asserting qualified immunity. At the hearing, Williams amended his complaint to allege malicious prosecution and dropped all other claims, except defamation. Subsequently, the trial court denied summary judgment on the malicious prosecution claims, finding qualified immunity inapplicable, but granted summary judgment on the defamation claim because Williams failed to provide substantial evidence of its elements. This interlocutory appeal followed.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the

---

[2] Kentucky Rules of Civil Procedure.

moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006).

## ANALYSIS

The City and Burris filed an interlocutory appeal, arguing the claims against them are barred by qualified immunity. This appeal is properly before us because an order denying a substantial claim of qualified official immunity is immediately appealable. *Harrod v. Caney*, 547 S.W.3d 536, 540 (Ky. App. 2018); *Breathitt Cty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009); *Mattingly v. Mitchell*, 425 S.W.3d 85, 89 (Ky. App. 2013).

On appeal, the City and Burris argue the trial court erred by determining they are not entitled to qualified immunity for Williams' malicious prosecution claims against them. The standards for immunity are well-settled:

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. *Salyer v. Patrick*, 874 F.2d 374 (6th Cir. 1989). . . . [W]hen an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. . . . But when sued in their individual capacities, public officers and employees enjoy only qualified official

-5-

immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am.Jur.2d, *Public Officers and Employees*, § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id*. § 322; (2) in good faith; and (3) within the scope of the employee's authority. *Id*. § 309; Restatement (Second) [of the Law of Torts § 895D cmt. g. (1979)].

*Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001).

Here, we must determine what qualified immunity the City and Burris enjoy, if any, as an affirmative defense to Williams' claims against them. Williams alleges the City and Burris committed the intentional tort of malicious prosecution. Here, we note that qualified immunity is not a blanket shield for all tort claims. In fact, in Kentucky, qualified immunity has only generally protected *negligent* acts. *Id*. at 521.

*Yanero*, the seminal authority on governmental immunity in Kentucky, held that qualified official immunity protects discretionary acts *negligently* performed by public officials so long as they are acting within their authority and in good faith. *Id*. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who *knowingly* violate the law." *Stanton v. Sims*, 571 U.S. 3, 6, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (emphasis added) (internal

quotation marks and citations omitted).  "[W]hen sued in their individual

capacities, public officers and employees enjoy only qualified official immunity,

which affords protection from damages liability for *good faith* judgment calls made

in a legally uncertain environment."  *Yanero*, 65 S.W.3d at 522 (emphasis added)

(citation omitted).  However, by their very nature, most intentional torts preclude

acting in good faith.  Stated another way,

> in the context of qualified official immunity, "bad faith"
> can be predicated on a violation of a constitutional,
> statutory, or other clearly established right which a
> person in the public employee's position presumptively
> would have known was afforded to a person in the
> plaintiff's position, *i.e.*, objective unreasonableness; or if
> the officer or employee *willfully or maliciously* intended
> to harm the plaintiff or acted with a corrupt motive.  63C
> Am.Jur.2d, *Public Officers and Employees*, § 333 (1997).

*Id*. at 523 (emphasis added).  Thus, while immunity may extend to negligent acts,

to what extent does qualified immunity apply to intentional, willful, or malicious

conduct?

In the case herein, Williams claims the City and Burris committed the

intentional tort of malicious prosecution.  The elements of a malicious prosecution

claim are:

> 1) the defendant initiated, continued, or procured a
> criminal or civil judicial proceeding, or an administrative
> disciplinary proceeding against the plaintiff;
>
> 2) the defendant acted without probable cause;

3) the defendant *acted with malice*, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;

4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016) (emphasis added). *Martin* held qualified official immunity does not shield a police officer from a malicious prosecution claim. In so holding, the Court explained:

> Acting with malice and acting in good faith are mutually exclusive. Malice is a material fact that a plaintiff must prove to sustain a malicious prosecution claim. [*Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981).] But, it is also a fact that defeats the defendant's assertion of qualified official immunity. Official immunity is unavailable to public officers who acted "*with the malicious intention* to cause a deprivation of constitutional rights or other injury. . . ." *Yanero*, 65 S.W.3d at 523 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)[)].
>
> It thus becomes apparent that the very same evidence that establishes the eponymous element of a malicious prosecution action simultaneously negates the defense of official immunity. In simpler terms, *if a plaintiff can prove that a police officer acted with malice, the officer has no immunity; if the plaintiff cannot prove malice, the officer needs no immunity.*

*Id*. at 5 (latter emphasis added).

*Martin* is controlling here, despite assertions of the City and Burris to the contrary. The trial court was not required to follow or cite any other law[3] or case law.[4] The trial court correctly applied *Martin* to determine that the City and Burris are *not* entitled to summary judgment on the ground of qualified official immunity. If the City or Burris acted with malice, they are not entitled to immunity; if they had no malice, they need no immunity, since proof of malice is a necessary element to prevail on a claim of malicious prosecution. Therefore, the trial court correctly denied summary judgment on the malicious prosecution claim based on qualified immunity. Because the trial court did not err in denying summary judgment to the City and Burris on the grounds they are not entitled to

---

[3] Including but not limited to Kentucky's Claims Against Local Governments Act, Kentucky Revised Statutes 65.200, *et seq*.

[4] The City and Burris claim the trial court "completely ignored specific, relevant cases." In particular, they take issue with the trial court's failure to cite to the unpublished case of *Caudill v. Stephens*, No. 2006-CA-000477-MR, 2007 WL 625348 (Ky. App. Mar. 2, 2007). They claim *Caudill* is "a key precedent"; however, CR 76.28(4)(c) states, "Opinions that are not to be published shall not be cited or used as binding precedent in any other case in any court of this state . . ." and "unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court." As an unpublished case rendered in 2007, *Caudill* falls within the type of publication status that makes it merely persuasive authority. We further note that the other cases appellants urge our court to consider are also unpublished or predate *Martin*.

qualified official immunity, we need not discuss any remaining contentions of error.[5]

## CONCLUSION

Therefore, and for the foregoing reasons, the order entered by the Taylor Circuit Court is AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE: |
|---|---|
| Jason Bell | Ramon McGee |
| Elizabethtown, Kentucky | Louisville, Kentucky |

---

[5] The City and Burris argue Williams has no actual evidence of bad faith. This issue was not ruled on by the trial court. An appellate court "is without authority to review issues not . . . decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009). As such, we decline to discuss this issue.