## Schott v. Indiana National Life Insurance Company.

(Decided October 28, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas Division No. 2).

1. Malicious Prosecution—Probable Cause.—In an action for malicious prosecution, where the plaintiff's evidence discloses the facts upon which the prosecutor acted, and these facts show that there was probable cause for the prosecution, the court should instruct the jury peremptorily to find for the defendant. In such a case probable cause is a question of law for the court, where reasonable men would agree as to the inference to be drawn from the facts.

2. Indictment—Presumption of Reasonable Grounds for Prosecution.—When a grand jury, upon other testimony than that of the prosecutor alone, find an indictment to be a true bill, the presumption is prima facie that the prosecutor had reasonable grounds for the prosecution, although the person indicted was afterward acquitted.

HENRY J. TILFORD for appellant.

KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Early in the year 1910, a number of insurance companies doing business in Louisville learned that they were being defrauded as the result of a conspiracy of their agents to procure insurance upon the lives of unfit persons by false applications and answers, and by the substitution of healthy persons for examination in lieu of the unfit persons named in the applications. The com-

panies employed attorneys to represent them and ferret out the frauds. Among the companies was the Indiana National Life Insurance Company. Dr. C. G. Schott had made a number of medical examinations, and in the course of their investigation the attorneys saw Dr. Schott and he went with them to see some of the persons who had been examined, and assisted them in getting up the evidence in regard to the matter. Subsequently warrants were taken out in the city court against three insurance agents; Dr. Schott was summoned as a witness for the Commonwealth, and in the city court the three agents were held over to answer any indictment that might be found against them by the grand jury. Dr. Schott was summoned to appear before the grand jury, and as we understand the record appeared before it as a witness. The grand jury returned indictments against the three agents and also against Dr. Schott and Dr. Rogers. On the calling of the case in the circuit court, the Commonwealth Attorney dismissed the indictment as to Dr. Rogers. One of the insurance agents was sick when the case came on for trial; one pleaded guilty, and the case being tried as to the third agent and Dr. Schott, the agent was found guilty and Dr. Schott was acquitted. Afterwards he brought this suit against the Indiana National Life Insurance Company to recover damages, charging that the prosecution against him was instituted by it maliciously and without probable cause. The defendant filed an answer controverting the allegations of the petition, and the case coming on for trial before a jury, at the conclusion of the evidence for the plaintiff, the court instructed the jury peremptorily to find for the defendant. The plaintiff's petition having been dismissed, he appeals.

The only question we deem it necessary to consider on the appeal is whether there was any evidence tending to show that the prosecution was without probable cause. In Newell on Malicious Prosecutions, page 10, it is said:

"The want of probable cause is the essential ground of the action. * * * The burden of proof is upon the plaintiff to prove affirmatively, by circumstances or otherwise, as he may be able, that the defendant had no ground for commencing the prosecution."

Again on page 276 he says:

"Whether the circumstances alleged to show it probable are true and existed is a matter of fact, to be determined by the jury, but whether, supposing this to be

true, they amount to probable cause, is a question of law."

To same effect see Marshall v. Maddock, Lieetll's Select Cases, 106; Yocum v. Polly, 1 B. Mon., 358; Roberts v. Thomas, 135 Ky., 63; Hudson v. Nolen, 142 Ky., 824. In Burks v. Ferriell, 26 R., 37, we said:

"Even if appellee had actually been innocent of the offense charged, yet if appellant, when the warrant was obtained, had actually reasonable grounds to believe and did believe that appellee was guilty of the offense, he can not be mulched in damages for having procured the warrant. If the law was otherwise it would be a great hindrance and almost an impossibility to have the criminal law of the Commonwealth enforced. Individuals would be afraid to put the criminal law in motion for fear that they would be made responsible in damages, if perchance, it turned out that the party prosecuted was innocent."

What facts and circumstances amount to probable cause is a question of law. Whether they exist or not in any particular case where the evidence is conflicting is a question of fact to be determined by the jury. But where there is no conflict in the evidence, whether the facts shown amount to probable cause is ordinarily a question of law for the court. (Ahrens & Ott v. Hoeher, 106 Ky., 694; Metropolitan Life Ins. Co. v. Miller, 114 Ky., 754: Providence, etc., Associated Society v. Johnson, 115 Ky., 84; Farris v. Starke, 3 B. Mon., 4; Alexander v. Reid, 19 R., 1636; Moore v. Large, 20 R., 409.)

In Garrard v. Willet, 4 J. J. M., 630, this court said:

"When a grand jury, upon other testimony than that of the prosecutor alone, find an indictment to be a true bill, the presumption is *prima facie,* that, as they, on their oaths, have said that the person indicted is guilty, the prosecutor had reasonable grounds for the prosecution. Nevertheless, the law still presumes that the person indicted is innocent. But this presumption will not repeal the inference that there was 'probable cause.' And consequently, the final acquittal of the accused will not, *per se,* prove a want of 'probable cause.' "

To same effect see Branham v. Berry, 4 R., 414; Jones v. L. & N. R. R. Co., 29 R., 946.

It remains to determine under these authorities whether there was any evidence tending to show a want of probable cause for the prosecution; for if there was any evidence of a want of probable cause, the question

was for the jury, and the court should not have taken the case from the jury. While there is a *prima facie* presumption of probable cause from the finding of an indictment by the grand jury, and this presumption would not be overcome by the acquittal of the accused on the trial of the indictment, the presumption would be overcome ordinarily by proof in addition showing that the defendant had no connection with the offense; unless this proof also disclosed that the prosecutor had reasonable grounds for believing him guilty, although he was in fact innocent. In the case before us the defendant's proof has not been heard. The case is here on the plaintiff's own evidence. This shows these facts: A large amount of fraudulent insurance had been taken out; he had made the examination of one Jacob Cassell, reporting him sound and a good risk. Cassell was in fact a one-armed man and not a fit subject for insurance. He was personally known to the doctor and had been treated by him several times, the last time about two weeks before the date of the application. He had made the examination of Walter E. Rider, reporting him to be a perfectly healthy man, when in fact Rider was dying of consumption, and an unfit risk. He made the examination of Luke Flannery, reporting him to be 56 years of age, and Flannery signed by making his mark, when in fact Flannery was over sixty and beyond the age when he could be insured; and a few weeks later he examined Flannery on another application in another company, when Flannery signed his name in a good round hand. He told the agents of the company as to Rider that he had examined a man he supposed was Rider, and on the trial he testified that he examined the supposed Rider at different times at the same place for different companies, describing Rider as a red-faced looking man, with a good big chest, about middle aged. In the application he stated the man's age to be 36. In all these cases on the investigation by the insurance company he refused to say whether substitutes had been imposed upon him. He examined Barney Maher purporting him to be 53 years of age, and a grocery and feed store clerk, though Barney Maher is in fact a hunchback and a very old man. He made this examination back of a saloon and not at his home or place of business. The circuit court thus summed up the case to the jury:

"We are called upon to determine whether or not the insurance company, assuming that they procured the in-

dictment and prosecuted Doctor Schott, had reasonable grounds to believe, and did believe, that Doctor Schott was a party to this fraudulent conspiracy, and in doing that we can only look at such evidence as they had or could by reasonable diligence obtain. You have heard the testimony about these three or four or five fraudulent applications; you have heard the testimony about Dr. Schott examining a man and seeing him make his signature by mark, a few months after that examining the same man for a large policy, seeing him write his name in full, a very good handwriting, legible, quite so; you have heard the testimony that Dr. Schott was called upon to verify the statement that he had been imposed upon and substitutes had been furnished to him for the real applicants for insurance, and you have heard his statement that he declined to make such statement as that, because he did not know. There are other facts and circumstances that I might recount, but I only recount that to recall your attention to what is necessary for the plaintiff to show to recover here against the insurance company, and that is to show that the insurance company did not have sufficient evidence to cause a reasonable man to believe that he, Dr. Schott, was guilty of the offense.

"There is no evidence here at all that the real men who applied for these three policies of insurance, Rider, Cassell, Flannery, there is no proof tending to show here, gentlemen, that any one of those three men who applied for this insurance, was examined by Doctor Schott. On the contrary, the proof convinces this court, and I think counsel in the preparation and presentation of the case concede to themselves and to the court, in fact, that there were substitutions there and that Doctor Schott had been fraudulently procured to certify as to the health and family history, and so forth, of these people by examining a healthy man upon a sick man's application. These were the facts that were before the insurance company, and this court is to determine what a reasonably prudent man would do under circumstances like that."

We concur with the circuit court in the conclusion that on the admitted facts shown by the plaintiff's evidence, there was probable cause for the prosecution, although it afterwards turned out that Dr. Schott was in fact imposed upon by the insurance agents. The rule as to when a peremptory instruction should be given in actions for malicious prosecution is not different from

that applicable in other like civil actions. A peremptory instruction should be given where the facts are undisputed, and on the undisputed facts, there is not room for a difference of opinion among reasonable men as to the inference to be drawn from them. The gist of an action for malicious prosecution is the abuse of the process of the court. To make out his case the plaintiff must show both malice and want of probable cause. The proper enforcement of our criminal laws requires that persons should not be deterred from instituting proceedings to enforce them where they have probable cause for their action. It seems to us that the facts we have stated warranted the grand jury in finding the indictment against Dr. Schott, and that reasonable men would conclude on these facts that there was probable cause for believing him guilty.

Judgment affirmed.