Taja DAVIDSON, Appellant,

v.

**CASTNER–KNOTT DRY GOODS CO., INC., Appellee.**

No. 2005–CA–000259–MR.

Court of Appeals of Kentucky.

April 28, 2006.

Discretionary Review Denied by Supreme Court Oct. 12, 2006.

John William Stewart, Louisville, KY, for Appellant.

Robert E. Stopher, Louisville, KY, for Appellee.

Before COMBS, Chief Judge; DYCHE and HENRY, Judges.

*OPINION*

HENRY, Judge.

Taja Davidson appeals from a January 28, 2005 order of the Warren Circuit Court granting summary judgment to Castner–Knott Dry Goods Co., Inc. as to Davidson's malicious prosecution claim. Upon review, we reverse and remand for further proceedings.

On October 2, 1997, Davidson reported to the Nashville Metropolitan Police Department that checks on her account at First Union National Bank of Tennessee had been stolen, and that her account there had been closed for approximately one year. The report resulted from Davidson's discovery that two of those checks had been presented to a grocery store and a Wal–Mart in Nashville.

On November 28, 1997, Castner–Knott accepted a check in the amount of $349.79 drawn on Davidson's First Union account. The check was dishonored by the bank and returned to Castner–Knott marked "Account Closed." Subsequently, on or about March 5, 1998, Timothy Bush—a loss prevention employee at Castner–Knott—appeared at the Warren County Attorney's office and signed a criminal complaint against Davidson. On April 8, 1998, the Warren County Grand Jury reported a True Bill against Davidson charging her with Theft by Deception over $300.00,[1] and a bench warrant was issued for her arrest.

On July 21, 2001, Davidson was a passenger in a car that was stopped in Blue Ash, Ohio, for an alleged traffic violation. A record check disclosed the Warren County bench warrant, and Davidson was arrested. Several days later, she appeared in court in Hamilton County, Ohio, where she waived extradition before being taken to Warren County by sheriff's deputies. She was subsequently arraigned and released from custody on July 27, 2001, by Warren Circuit Court Judge Thomas R. Lewis.

On August 29, 2001, the Commonwealth Attorney filed a written motion to dismiss the indictment against Davidson without prejudice. On September 4, 2001, at the scheduled pretrial conference, the Commonwealth Attorney told Judge Lewis that he sought to dismiss the case due to (1) Davidson's police report indicating that her checks had been stolen, and (2) the fact that Castner–Knott no longer did business in Warren County, so the Commonwealth did not have a witness. In response to the Commonwealth's motion to dismiss, counsel for Davidson moved the court to dismiss the indictment with prejudice, citing the Commonwealth's inability to go forward with the case and the injustice that had been caused to Davidson. On September 5, 2001, the court entered an order dismissing the indictment without prejudice, in accordance with the Commonwealth's request.

On August 30, 2002, Davidson filed suit against Castner–Knott in Warren Circuit Court alleging malicious prosecution and abuse of process. On July 24, 2003, Castner–Knott moved for summary judgment on the malicious prosecution claim on the basis that Davidson could not prove that the underlying criminal proceeding terminated in her favor, in part because she allegedly agreed to the Commonwealth's motion to dismiss without prejudice. On September 2, 2003, Judge Lewis entered an order denying the motion. Castner–Knott appealed the denial to this court and

---

**1.** Pursuant to Kentucky Revised Statutes ("KRS") 514.040.

then to the Kentucky Supreme Court, but the appeal was rejected in both cases.

On September 29, 2004, following Judge Lewis' retirement, Castner–Knott renewed its motion for summary judgment. It reiterated the arguments made in its previous motion and additionally contended that Timothy Bush had probable cause to swear out a complaint against Davidson. Following an October 26, 2004 hearing and extensive briefing, Judge John R. Grise indicated that he would grant the motion at a December 16, 2004 pretrial conference. A written order to this effect was entered on January 28, 2005.

In this order, the trial court concluded that "Castner–Knott is entitled to summary judgment because Ms. Davidson has failed to show that the dismissal without prejudice of the indictment constitutes a termination of criminal proceedings in her favor." First—relying primarily upon *Van Arsdale v. Caswell,* 311 S.W.2d 404 (Ky. 1958)—the trial court held that, although a dismissal without prejudice is not final for purposes of the tort of malicious prosecution, Davidson still could have appealed the dismissal without prejudice. It also noted that a formal objection to the dismissal without prejudice is nowhere to be found in the record.

The trial court then disagreed with Davidson's argument that a dismissal without prejudice was a termination in her favor, citing to a passage in 52 Am.Jur.2d *Malicious Prosecution* § 40 (2000) that states: "Some types of terminations that do not satisfy the requirement for a favorable termination include ... the striking of the case from the criminal docket with leave to reinstate." The court also cited to 52 Am.Jur.2d *Malicious Prosecution* § 34 and *Van Arsdale* for the proposition that "an indefinite continuance does not amount to an abandonment of prosecution that

would permit maintenance of a malicious prosecution action."

The court also found—pointing to § 660(c) of the Restatement (Second) of Torts while indicating that it has never been adopted by a Kentucky appellate court—that Davidson was not entitled to relief because her indictment was not withdrawn because the Commonwealth thought she was innocent; instead, it "was dismissed because attainment of evidence necessary to fully prosecute her was not readily available." The court further held—citing to this same provision—that Davidson's indictment "was not abandoned out of mercy requested or accepted by the accused." In this context, the court concluded that the Commonwealth had to believe that Davidson was guilty; otherwise, it would not have dismissed her indictment *without* prejudice.

Consequently, the trial court held that "Davidson will not be able to prove that the indictment that was dismissed without prejudice constitutes a termination of proceedings in her favor, even if the facts indicate that the Commonwealth will more than likely never re-indict her." It continued: "From the Kentucky case law cited above, there are no genuine issues of material fact as to whether the 'filing away' of an indictment constitutes nothing more than in [sic] indefinite continuance of the state's prerogative to bring charges against Ms. Davidson at a later date." The court finally concluded: "A dismissal without prejudice is neither final nor in Ms. Davidson's favor. Therefore, summary judgment in favor of Castner–Knott should be granted." This appeal followed.

On appeal, Davidson first argues that Castner–Knott's renewed summary judgment motion and the trial court's order granting it violate the "law of the case" doctrine. She specifically contends that the original order from Judge Lewis deny-

ing summary judgment was the "law of the case" pursuant to CR [2] 54.02(1).

As a general rule, "[t]he doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the lawsuit." *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705 n. 4 (Ky.App. 2004). However, a judge does have the discretionary authority to reconsider a ruling. *Id.* "Generally, a judge may reexamine an earlier ruling and rescind it if he has a reasonable conviction that it was wrong and it would not cause undue prejudice to the party that benefited from it." *Id.* Moreover, and of particular relevance here, "[i]t is well established that a trial court may reconsider and grant summary judgment to a party subsequent to an earlier denial." *Id.*

We review a decision to reconsider under an abuse of discretion standard. *Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky.2004); *see also Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994). After examining the record and the arguments of both parties, we do not believe that the trial court abused its discretion in deciding to reconsider its previous ruling. Judge Grise obviously felt that Judge Lewis' previous decision was wrong, and we do not believe that Davidson has produced enough substantive evidence of undue prejudice to merit a reversal on this ground. Accordingly, we turn to her remaining arguments.

Our standard of review as to cases where a summary judgment has been granted is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996); CR 56.03. Summary judgment "is proper only where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 479 (Ky.1991). And, "[b]ecause summary judgments involve no fact finding, this Court reviews them *de novo*, in the sense that we owe no deference to the conclusions of the trial court." *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky. App.2000).

"[T]here are six basic elements necessary to the maintenance of an action for malicious prosecution, in response to both criminal prosecutions and civil action." *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky.1981). They include: "(1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding." *Id.* Historically, the tort of malicious prosecution is one that has not been favored in the law. *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky.1989); *Reid v. True*, 302 S.W.2d 846, 847–48 (Ky.1957). Accordingly, one claiming malicious prosecution must strictly comply with the elements of the tort. *See Prewitt*, 777 S.W.2d at 895; *Raine*, 621 S.W.2d at 899. In reviewing the record here, we find that the trial court's decision to grant summary judgment was predicated entirely upon its conclusion that Davidson could not satisfy the third prong of this test; that is, she

**2.** Kentucky Rules of Civil Procedure.

could not prove a termination of the proceedings in her favor.

Although we find the trial court's order to be somewhat unclear as to the issue, Castner–Knott submits, and we agree, that the court concluded—relying on *Van Arsdale v. Caswell, supra*—that dismissing a criminal complaint without prejudice is the same as "filing away" a complaint. Therefore, such a dismissal "is not a final determination thereof but is an indefinite continuance of the case which may be reinstated on the docket upon reasonable notice at any time after such order is entered." *Van Arsdale,* 311 S.W.2d at 408.

■ Consequently, the first question we must consider is whether a dismissal without prejudice is the same as "filing away" a complaint for the purposes of a malicious prosecution claim. After reviewing the applicable case law, we believe that the answer is "No." Indeed, that law directly refutes the trial court's conclusion. For example, in *Hoskins v. Maricle,* 150 S.W.3d 1 (Ky.2004), our Supreme Court stated that the procedure of "filing away" a complaint was commonly used when, after issuance of an indictment, "the defendant cannot be found within the jurisdiction, witnesses are unavailable, or it is deemed appropriate to abate the prosecution conditioned upon the defendant's compliance with certain requirements." *Id.* at 13 n. 8. The Court then noted: *"The practice is regarded not as a dismissal, which would require a reindictment, but as an indefinite continuance." Id.,* citing *Commonwealth v. Bottoms,* 105 Ky. 222, 48 S.W. 974, 975 (1899) (Italics added). Indeed, even *Van Arsdale* cites to case law pointing out this fact. *Van Arsdale,* 311 S.W.2d at 407 (citing *Jones v. Commonwealth,* 114 Ky. 599, 71 S.W. 643 (1903), for the proposition that "a 'filing away' order does not operate as a dismissal of the indictment but is only an indefinite continu-

ance."). Accordingly, there is an obvious distinction between the dismissal of an indictment and simply "filing it away." The latter is considered an "indefinite continuance," while the former is not. The trial court's suggestion otherwise was in error.

■ With this point established, the question then becomes whether a dismissal without prejudice can be considered a "final termination" for purposes of malicious prosecution. In addressing this problem, we first note that our courts established long ago that the termination of a prosecution "by final trial, *or dismissal by the prosecuting authorities or by the prosecutor himself,* and without the voluntary procurement of the defendant in the prosecution" constitutes a final termination for purposes of a malicious prosecution suit. *Davis v. Brady,* 218 Ky. 384, 291 S.W. 412, 413 (1927) (Italics added). The point made by Castner–Knott here, however, is that a dismissal *without* prejudice—unlike a dismissal *with* prejudice—is not sufficiently final to meet this requirement. Davidson, of course, disagrees.

We believe that this question can be resolved by reference to *Commonwealth v. Sowell,* 157 S.W.3d 616 (Ky.2005). In *Sowell,* our Supreme Court reiterated its long-held position that a dismissal without prejudice is a final and appealable order. *Id.* at 617, citing *Wood v. Downing's Admr.,* 110 Ky. 656, 62 S.W. 487, 488 (1901); *C.I.T. Corp. v. Teague,* 293 Ky. 521, 169 S.W.2d 593, 593 (1943); *Grubbs v. Slater & Gilroy, Inc.,* 267 S.W.2d 754, 755 (Ky.1954). Citing in particular to *Wood v. Downing's Admr.,* the Court noted that an order dismissing without prejudice "fixed absolutely and finally the rights of the parties in this suit in relation to the subject matter of the litigation, and put an end to the suit. It was a final appealable order." *Id.,* citing *Wood,* 110 Ky. 656, 62 S.W. at 488. Moreover, "[n]otwithstanding

the 'without prejudice' language, an order of dismissal adjudicates all rights. Nothing remains to be done." *Id.*

 Castner–Knott argues, however, that *Sowell* supports the idea that a dismissal without prejudice does not constitute a "final termination" because it "does not bar another indictment or prosecution." *Id.* at 619. However, upon much consideration, we do not believe that such a bar is necessary for "finality" in malicious prosecution cases, as our law in this area only requires that a particular *proceeding* be terminated in a claimant's favor. As our Supreme Court further provided in *Sowell,* again citing *Commonwealth v. Smith:*

> When an indictment is dismissed, unless the matter be then referred to the grand jury, it is a final order in that case. After the term at which the order is entered, the court has not the power to set it aside. *Should the court or the prosecution desire to retain control of the case after the term, it may be done by an order filing the indictment away, to be redocketed on motion of the commonwealth. But, without such reservation, an unconditional dismissal is an end of that case.* If, therefore, the commonwealth desires to reinstate the prosecution, it may do so by procuring another indictment, or by warrant of arrest sworn out before an examining magistrate, and then proceed as in other original prosecutions.

*Id.* at 618–19, citing *Smith,* 140 Ky. 580, 131 S.W. at 392 (Italics added).

While *Sowell* was not rendered in the context of a malicious prosecution case, we believe that its conclusions support our position that a dismissal of a case—whether it be with or without prejudice—constitutes a "final termination" for purposes of the tort.[3] Once a case is dismissed without prejudice, the proceedings in which it occurred are final and concluded as a matter of law. In order for the case to be prosecuted again, an entirely new set of proceedings must be instituted and the prosecuting party must "proceed as in other original prosecutions." *Id.* at 619. For additional support of this stance, we cite to the seminal malicious prosecution case of *Jaffe v. Stone,* 18 Cal.2d 146, 114 P.2d 335 (Cal.1941), which provides, in relevant part:

> In stating the requirement of termination, courts often say that the proceeding must be "finally" terminated. Such a statement is entirely accurate if the ordinary reasonable meaning of the words is taken. The *proceeding* must be finally terminated; that is, the particular criminal proceeding commencing, for example, by complaint and arrest, must have passed through some such stage as preliminary hearing and dismissal, or trial and acquittal or abandonment by the prosecuting authorities. When this has occurred, *that proceeding is finally terminated.* If the termination was such as not to constitute a bar to a new prosecution, the accused may be charged and tried again for the same offense; but this will be a *new proceeding,* with a new court number, new pleadings, new judge and jury, and a new judgment.
>
> . . .
>
> In other words, whether the proceeding is dropped by the magistrate or in the superior court, it is sufficient that *the particular proceeding* is terminated. It is immaterial whether the termination is

---

3. Moreover, as can be seen in the passage above, the case provides further support for our position that a dismissal without prejudice is not the same as the "filing away" of a complaint.

a bar to any further prosecution for the same offense, or whether the accused may be charged and tried anew. Only if the new proceeding is already instituted can the accused be precluded from suing for malicious prosecution. This view is supported by the great weight of authority.

*Jaffe,* 18 Cal.2d at 152, 156–57, 114 P.2d 335 (Italics in original); *see also* Restatement (Second) of Torts § 659 and cmts. b & e (1977).

■ We do note that an exception to the general rule set forth here shall be necessary when new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused. *See* Restatement (Second) of Torts § 660(d); *Jaffe,* 18 Cal.2d at 156, 114 P.2d 335. However, as no new proceedings have been instituted in this case and—as discussed below—it appears that they never will be, this exception is not applicable here. Consequently, we find that a dismissal without prejudice is a "final termination" for purposes of a malicious prosecution suit.

■ With this said, the third prong of our malicious prosecution test also requires that the termination be favorable to the accused. *Raine,* 621 S.W.2d at 899. In *Alcorn v. Gordon,* 762 S.W.2d 809 (Ky. App.1988), a panel of this court cited to Comment a to the Restatement (Second) of Torts § 660 for the proposition that "[p]roceedings are 'terminated in favor of the accused' as that phrase is used in § 653 and throughout this Topic, only when their final disposition is such as to indicate the innocence of the accused." *Id.* at 811–12. Further citing to *Lackner v. LaCroix,* 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393 (1979), we elaborated on this principle, stating:

It is apparent "favorable" termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. *If the termination does not relate to the merits— reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.*

*Id.* at 812, citing *Lackner,* 159 Cal.Rptr. at 695, 602 P.2d at 395 (Italics added). We therefore concluded that "dismissal of a suit for technical or procedural reasons that do not reflect on the merits of the case is not a favorable termination of the action." *Id.*

■ Accordingly, the next question that arises for our consideration is whether the indictment against Davidson was dismissed for reasons reflecting on the merits of the case. As noted above, the trial court concluded that the indictment was not withdrawn because the Commonwealth thought Davidson was innocent; instead, it "was dismissed because attainment of evidence necessary to fully prosecute her was not readily available." While this appears to at least be part of the rationale for dismissal, the record also reflects that the Commonwealth's motion to dismiss was motivated by the discovery that Davidson reported to the police that her checks had been stolen almost two months before the incident at the heart of this matter occurred.

For example, the Commonwealth Attorney indicated at a March 31, 2003, discovery hearing in this case that Davidson's report was the reason that the Commonwealth moved for dismissal, and that the dismissal was the end of the prosecution as far as he was concerned. The record also

contains video of the September 4, 2001, hearing at which the Commonwealth Attorney moved to dismiss the indictment due, in part, to the discovery of the police report filed by Davidson.

Although we are hesitant to rule as a matter of law that the termination of Davidson's indictment was on the merits from the record that stands before us, we believe that the record clearly indicates that summary judgment as to this issue was inappropriate, particularly as we must consider all facts in a light most favorable to Davidson. We also note that if further discovery—for example, a sworn deposition of the Commonwealth Attorney who originally handled Davidson's indictment—supports the current record's strong suggestion that the Commonwealth's prosecution was abandoned, even in part, because of Davidson's report of stolen checks, the dismissal must be considered favorable to Davidson. While reaching such a conclusion requires further factual development, the determination of whether a termination is sufficiently favorable ultimately rests with the trial court as a matter of law, absent a factual dispute relative to the circumstances of the dismissal. *See* Restatement (Second) of Torts § 673(1)(b) & cmt. e.; *Sierra Club Foundation v. Graham*, 72 Cal.App.4th 1135, 1149, 85 Cal. Rptr.2d 726 (1999); *Hewitt v. Rice*, 119 P.3d 541, 544 (Colo.Ct.App.2004); *Palmer Development Corp. v. Gordon*, 723 A.2d 881, 883 (Me.1999); *Cowan v. Gamble*, 247 S.W.2d 779, 780 (Mo.1952); *Ash v. Ash*, 72 Ohio St.3d 520, 651 N.E.2d 945, 948 (1995); *Chittenden Trust Co. v. Marshall*, 146 Vt. 543, 507 A.2d 965, 970 (1986).

The parties also engage in some debate over the specific applicability of the Restatement (Second) of Torts § 660(a) in this case. This provision provides that "[a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if . . . the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused[.]"

Castner–Knott contends that Davidson "effectively compromised the criminal charge against her by agreeing to a dismissal without prejudice." While the record contains absolutely nothing indicating that Davidson agreed to such a dismissal (indeed, as the trial court acknowledged, it appears that she made no efforts to bargain with the Commonwealth in exchange for a dismissal and instead strenuously argued for a dismissal *with* prejudice), Castner–Knott argues that she "compromised" by failing to demand a trial or to file an appeal of the trial court's decision. We simply do not agree with this position. The language of Restatement (Second) of Torts § 660(a) clearly anticipates an actual agreement of compromise between the prosecutor and the accused leading, in turn, to an abandonment or dismissal of the prosecution. The record does not suggest that this occurred here, so Castner–Knott's argument in this respect must be rejected. We also fail to see how any of the other subsections of Restatement (Second) of Torts § 660 could be applicable here, so we decline to comment on them any further.

The parties finally raise the issue of whether probable cause existed for charges to be brought against Davidson. While this question is obviously one of importance in a malicious prosecution case, we note that the trial court did not address it in its decision to grant Castner–Knott summary judgment. Accordingly, we must decline to consider it here. *See Gailor v. Alsabi*, 990 S.W.2d 597, 602 (Ky. 1999) ("We will not address issues raised but not decided by the Court below.");

*Regional Jail Authority v. Tackett,* 770 S.W.2d 225, 228 (Ky.1989) ("The Court of Appeals is without authority to review issues not raised in or decided by the trial court.").

■ With this said, as this case is to be remanded, we believe it will be of some benefit to the trial court if we clear up one possible misconception raised by the parties' briefs. Castner–Knott argues that the Warren County grand jury's finding of probable cause to issue an indictment defeats Davidson's claim as a matter of law. However, Kentucky courts have expressed the role of a grand jury indictment as to the element of probable cause in malicious prosecution cases many times: "When a grand jury, upon other testimony than that of the prosecutor alone, find an indictment to be a true bill, the presumption is prima facie that, as they, on their oaths, have said that the person indicted is guilty, the prosecutor had reasonable grounds for the prosecution." *Conder v. Morrison,* 275 Ky. 360, 121 S.W.2d 930, 931 (1938); *see also Schott v. Indiana Nat. Life Insurance Co.,* 160 Ky. 533, 535, 169 S.W. 1023 (1914); *Garrard v. Willet,* 27 Ky. (4 J.J. Marsh.) 628, 630 (1830). Consequently, while a grand jury indictment raises a presumption of probable cause, this presumption can be rebutted by the plaintiff. *Conder,* 121 S.W.2d at 931–32.

Accordingly, we reverse the Warren Circuit Court's entry of summary judgment against Taja Davidson and remand for proceedings consistent with this opinion.

DYCHE, Judge, concurs.

COMBS, Chief Judge, concurs and files separate opinion.

COMBS, Chief Judge, concurring.

I would go a step beyond the well-reasoned majority opinion and would hold that the favorable termination of Davidson's indictment was indeed on the *merits*—or at the very least should have been so considered based on the record. It is abundantly clear that Davidson reported the theft of her checks to the police well before the check was written to Castner–Knott. It appears conclusive that summary judgment was properly granted in her favor and that the second summary judgment against her (the subject matter of this appeal) was erroneously entered as a matter of law.