RENDERED: SEPTEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000867-MR

MOSEN KHANI, ALLIANCE
CHIROPRACTIC OF S-E, PLLC                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE ANN BAILEY SMITH, JUDGE
ACTION NO. 16-CI-002336


DENNIS SHORT, Individually, and
BLUEGRASS CHIRO, PLLC                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

CALDWELL, JUDGE:  This appeal is from the Jefferson Circuit Court's opinion

and order granting summary judgment on claims of tortious interference with

business relations, negligent misrepresentation, and breach of contract.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Appellants, Mosen Khani and Alliance Chiropractic of S-E, PLLC[1] (Dr. Khani), filed an action in Jefferson Circuit Court asserting claims of tortious interference with business relations, negligent misrepresentation, and breach of contract against Dennis Short, individually and/or as an agent of Bluegrass Chiropractic, PLLC (Dr. Short). According to the amended complaint, Dr. Khani suffered from medical problems limiting his ability to practice. So, in June 2015, he hired Dr. Christopher David (Dr. David) to assist him in his practice (Alliance Chiropractic of S-E, PLLC). Negotiations for Dr. David to lease the practice occurred, but Dr. David was unable to obtain financing.

Dr. David suggested that Dr. Dennis Short purchase the practice. Dr. Short and Dr. Khani engaged in email negotiations starting around August 2015. Dr. Khani asserts that he provided Dr. Short with detailed business and financial information during these negotiations. And he claims Dr. Short solicited Dr. Khani's staff and notified Dr. Khani's billing company of the purchase negotiations to get more business and/or financial information. Meanwhile, Dr.

---

[1] The notice of appeal refers to a single "Plaintiff/Appellant" named "Mosen Khani, Alliance Chiropractic of S-E, PLLC" as reflected by the caption on this opinion. However, the Appellees and trial court refer to "Mosen Khani" and "Alliance Chiropractic of S-E, PLLC" as separate entities and parties. Further, Kentucky Secretary of State records list an entity known as "Alliance Chiropractic of S-E, PLLC" with "Mosen Khani" as a member, but do not list an entity by the name of "Mosen Khani, Alliance Chiropractic of S-E, PLLC."

Khani took a leave of absence for health reasons so he allowed Dr. David to see all his patients and manage the practice. Meanwhile, Dr. Khani asserts that Dr. Short had found another practice to buy at a lower price.

On December 18, 2015, Dr. Short told Dr. Khani he would not be going through with the purchase, allegedly due to a lien on the practice. But apparently the lien found was on a different practice similarly named Alliance Chiropractic. And Dr. David soon told Dr. Khani he would be leaving to work for Dr. Short at the chiropractic practice recently bought by Dr. Short.

Dr. Khani further alleged in his complaint that he had to return to work despite his health problems due to Dr. Short's leaving. He also asserted that his practice was no longer as profitable because his health problems limited his ability to practice and the hours he could keep. Lastly, he asserted that several patients informed him that they received solicitations via mail from Dr. Short and Bluegrass Chiro PLLC.

In February 2017, Dr. Short filed a motion for summary judgment. Dr. Short asserted that in March 2013, Dr. David contacted Dr. Short inquiring about a position in his practice but Dr. Short did not have an immediate opening. Dr. David then obtained a position with Dr. Khani in his Fairdale, Kentucky office. After determining he was being treated unfairly by Dr. Khani in that he was receiving one-half of the proceeds but paying all of the payroll and expenses from

his portion, Dr. David attempted to obtain financing to purchase the practice from Dr. Khani. After his unsuccessful attempt at purchasing the practice, Dr. David contacted Dr. Short, requesting that he purchase Dr. Khani's practice.

Dr. Short has over the past several years purchased, and now operates, several chiropractic offices throughout Kentucky. Around August of 2015, Dr. Short began negotiations with Dr. Khani to purchase his chiropractic practice and lease the practice premises. Dr. Short told Dr. Khani that he was seeking to obtain a loan to purchase the practice and, also, that he needed certain information to supply to his bank.

Negotiations continued through December of 2015 when Dr. Short was advised by his bank that Dr. Khani's practice had several outstanding liens and was subject to a foreclosure action. Based on this information, the bank was not willing to lend the money for purchase so Dr. Short could not complete the purchase and notified Dr. Khani of this on December 18, 2015.

Dr. David had an at-will employment contract with Dr. Khani that did not contain a non-compete agreement. Dr. David advised Dr. Khani that he would be leaving the practice and, thereafter, Dr. Khani terminated Dr. David's employment. After his termination, Dr. David again sought employment with Dr. Short. After securing an agreement with Dr. Short and Bluegrass Chiro, PLLC to establish a new practice location, Dr. David sent letters to his former patients. Dr.

David advised his patients that he was leaving Dr. Khani's practice and the new location where he would be practicing. This was necessary to avoid any claim of patient abandonment. Neither Dr. Short nor Bluegrass Chiro, PLLC had anything to do with the correspondence and never had any contact with Dr. Khani's patients.

Dr. Khani filed a response to the motion for summary judgment. The response indicated, among other things, that the bank attorney's opinion letter was in error because it referenced liens or *lis pendens* notices which did not pertain to him or his practice—for example, referring to a lien on a different but similarly named entity ("Alliance Chiropractic, PLLC" rather than "Alliance Chiropractic of S-E, PLLC") located at a different address. Dr. Khani also asserted that there were genuine issues of material fact, including whether Dr. David's letter was sent out as a notice to protect Dr. David from abandonment claims or as a solicitation letter to "hundreds" of Alliance patients.

In May 2018, the trial court entered a brief order denying the summary judgment motion. The case then proceeded with the parties engaging in additional discovery and with a trial date set for early May 2019.

In February 2019, Dr. Short filed a renewed motion for summary judgment relying upon Dr. Khani's deposition (which took place after resolution of the prior summary judgment motion), as well as the supporting affidavits

accompanying the original summary judgment motion. Portions of Dr. Khani's deposition were attached as an exhibit.

Following additional briefing and a hearing, the trial court entered an opinion and order granting summary judgment to Dr. Short on all claims. The court dismissed the action with prejudice on the basis that Dr. Khani could not establish at least one element of each claim based on its review of the evidence of record.

Dr. Khani filed a motion to alter, amend, or vacate the trial court's grant of summary judgment and attached Dr. Short's deposition (which had not been fully transcribed prior to the trial court's granting the renewed summary judgment motion). Dr. Khani argued there was no explicit authority under the Kentucky Rules of Civil Procedure (CR) to file a "motion to renew" and that the renewed summary judgment motion was essentially an untimely motion for reconsideration since no new evidence was presented, "other than a question of damages." Additionally, he argued that summary judgment should be barred under the "law of the case" doctrine as the trial court had previously denied the prior motion finding that genuine issues of material fact existed for trial; therefore, the trial court erred in granting summary judgment on each claim.

The trial court denied the motion to alter, amend, or vacate and Dr. Khani filed a timely appeal of its order granting summary judgment.[2] We construe his arguments on appeal to involve: 1) a challenge to the trial court's reconsidering summary judgment after previously denying it, and 2) a challenge to the trial court's granting summary judgment on each individual claim of a) tortious interference with business relations, b) negligent misrepresentation, and c) breach of contract.

**Trial Court Had Authority to Reconsider Summary Judgment upon Renewed Motion for Summary Judgment**

Khani argues that it was improper for the trial court to consider the renewed summary judgment motion after previously denying summary judgment. In his view, the renewed summary judgment motion was effectively an untimely motion for reconsideration as it was filed more than ten days after the original denial. He also argues that the trial court's previous denial of summary judgment upon a finding of lack of genuine issues of material fact was law of the case.

We disagree. We discern nothing improper in the trial court's reconsidering summary judgment upon the renewed motion. Our precedent holds

---

[2] Khani's notice of appeal and appellate brief also state that he is appealing from the trial court's order denying his motion to alter, amend, or vacate. The pendency of his CR 59.05 motion tolled the running of his time to file an appeal of the underlying order granting summary judgment under CR 73.02(1)(e). But we do not have jurisdiction to review the denial of the CR 59.05 motion to alter, amend, or vacate itself. *Ford v. Ford*, 578 S.W.3d 356, 365-66 (Ky. App. 2019).

that a trial court has authority to consider a renewed motion for summary judgment after previously denying summary judgment. *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 601-02 (Ky. App. 2006). *See also Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 n.4 (Ky. App. 2004).

Furthermore, CR 56.02 expressly allows a defendant to file a summary judgment motion "at any time . . . ." In short, there was nothing improper in the trial court's considering the renewed motion for summary judgment despite having denied the original summary judgment motion.

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment under the non-deferential *de novo* standard, as the Kentucky Supreme Court has explained: "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So we operate under a de novo standard of review with no need to defer to the trial court's decision." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (footnotes omitted). CR 56.03 provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Kentucky case law construing CR 56.03 holds that granting summary judgment is only proper "when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (citing *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985)). The trial court noted this standard in Kentucky caselaw in its footnote about summary judgment standards, and it further discussed Kentucky caselaw regarding the practicalities of resolving summary judgment motions:

> In deciding whether to grant summary judgment, the Court must view the factual record in a light most favorable to the party opposing the motion and all doubts are to be resolved in his favor. *Steelvest* at 480. The movant bears the initial burden of convincing the court by evidence of record that no genuine issue of material fact is in dispute, but then the burden shifts to the party opposing summary judgment to present at least some affirmative evidence showing there is a genuine issue of material fact for trial. *Id*. at 482. . . .
>
> The trial judge must examine the evidence not to decide any issue of fact but, rather, to discover if a genuine issue exists. *Steelvest* at 480.

Despite recognizing, as noted in this footnote, that its task was to examine the evidence solely to determine if genuine issues existed and not to make findings of fact therein, the trial court did not explicitly discuss whether genuine

issues still existed in the body of its otherwise well-written, well-researched opinion and order.

The language of its opinion and order may give the impression that the trial court was making factual findings. For instance, the trial court concludes the order by stating it granted summary judgment upon "the findings made in the foregoing opinion" rather than expressly determining whether "genuine issues of material fact exist that cannot be resolved as a matter of law" as it did in denying the prior summary judgment motion. The body of the order also does not explicitly state that the court viewed the facts in the light most favorable to Dr. Khani.

Nonetheless, we conclude that the trial court arrived at the correct result in resolving the renewed motion for summary judgment based upon our review of precedent, the parties' briefs, and the record. As the Kentucky Supreme Court explained in *Welch v. American Publishing Company of Kentucky*, 3 S.W.3d 724 (Ky. 1999):

> [T]rial judges are to refrain from weighing evidence at the summary judgment stage; [] they are to review the record after discovery has been completed to determine whether the trier of fact could find a verdict for the non-moving party. *Steelvest* at 482–483. The inquiry should be whether, from the evidence of record, facts exist which would make it possible for the non-moving party to prevail. In the analysis, the focus should be on what is of record rather than what might be presented at trial.

*Id*. at 730.  Despite some language in the body of its order which might suggest that the trial court was weighing the evidence, we construe its opinion and order as effectively reviewing the record after discovery was completed and determining, based upon the evidence of record, that facts did not exist which would make it possible for the non-moving party (Dr. Khani) to prevail on his claims.  And from our review of the record, this determination was not erroneous.

### ANALYSIS

**A.    Tortious Interference**

In his amended complaint, Dr. Khani alleged that Dr. Short tortiously interfered with Dr. Khani's business relationship with Dr. David by "poaching" Dr. David to work at Bluegrass Chiro's newly-acquired Jeffersontown practice after the "deal fell through" for Dr. Short to purchase Dr. Khani's practice.  He alleged further tortious interference with other business relationships (apparently with patients) alleging Dr. Short used information he had obtained during the buy/sell negotiations to directly solicit patients from Alliance.

According to Dr. David's affidavit, he contacted Dr. Short about employment opportunities prior to his obtaining employment at Dr. Khani's practice and prior to operating Dr. Khani's practice by himself when Dr. Khani "retired" about six months after hiring him.  Dr. David also stated in his affidavit that his employment with Dr. Khani at Alliance Chiropractic was at will and

-11-

without a non-compete agreement. So, when purchase negotiations fell through and Dr. David was informed that Dr. Short's bank would not issue a loan to purchase the practice due to the practice having legal problems, he gave Dr. Khani two weeks' notice. The next day Dr. Khani told him not to come in anymore. Dr. David then sought employment from Dr. Short after leaving Dr. Khani's practice. Dr. Short was able to buy the practice where Dr. David was now employed (at the time of the affidavit). Dr. David also admitted to sending a letter to his "former patients" advising them he no longer worked at the "Fairdale office" but was now working at an office in Jeffersontown, asserting this was necessary to avoid claims of patient abandonment. A copy of the letter was attached to his affidavit as Exhibit A.

From our review of Dr. David's letter, the letter was on Bluegrass Chiro letterhead with "Jeffersontown" and Dr. David's name at the top and was dated January 4, 2016. The letter made no reference to the Alliance Chiropractic business entity or to Dr. Khani. It simply stated that Dr. David was no longer at the "Fairdale office" and that patients were welcome to either continue treatment with a chiropractor at the Fairdale location or with him at his new office in Jeffersontown.

Dr. Khani argued that Dr. David's letter was intended to solicit Dr. Khani's patients. Dr. Khani argued Dr. Short added Dr. David as an employee

immediately after unilaterally breaching the purchase contract to deliberately siphon off his patients.

"Tortious interference with business relations requires: (1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Halle v Banner Industries N.E., Inc.*, 453 S.W.3d 179, 188 (Ky. App. 2014). After listing these required elements, the trial court stated, "The plaintiffs have failed to produce any evidence to show that the defendants' solicitation of the defendants' [sic] employee and patients, and their motive in doing so, were improper," explaining:

> All the evidence in this case indicates that Dr. Short acted properly and within his legal rights at all relevant times. Dr. David had no contractual covenant not to compete with the plaintiffs and he was therefore free to leave their employ at will; there was, therefore, no contract with which the defendants could interfere. There is also no indication that Dr. Short's means of recruiting Dr. David were improper—i.e., that he committed any tort in the process of convincing him to leave. The same can be said about Dr. David's solicitation of the plaintiffs' patients after he left. There is no evidence that the patients were bound to the plaintiffs by contract, Dr. David only solicited those patients he treated, and the solicitation letter he sent the patients gave them a choice, to either stay with the plaintiffs or to continue their treatment with him. Every indication is that the letter was sent in good faith and there is certainly no tortious statement contained within it.

-13-

In his motion to alter, amend, or vacate, Dr. Khani asserted that there was at least a genuine issue of material fact (if not an outright admission) that Dr. David had stolen Dr. Khani's patient list to send out Bluegrass Chiro solicitation letters to these patients. Dr. Khani attached Dr. Short's deposition[3] and argued that there was a genuine issue of material fact whether Dr. David had only sent the letter to his own patients at Alliance or whether he had sent the letter to all of Dr. Khani's patients.

Dr. Khani made new arguments in his motion to alter, amend, or vacate. This went beyond the scope of a proper CR 59.05 motion. Thus, we do not unduly focus on such arguments as we determine whether the trial court properly granted summary judgment.

Dr. Short came forward with evidence (Dr. David's affidavit) that Dr. David was an at-will employee of Alliance, with no covenant not to compete, who had actively sought employment from Dr. Short rather than Dr. Short recruiting him. He also came forward with evidence that Dr. David only sent a letter to his former patients (Dr. David's affidavit). We also note that according to Dr. Khani's amended complaint, Dr. David was the only provider seeing patients for Alliance

---

[3] From our review of Dr. Short's deposition, he testified to a lack of personal knowledge about to whom Dr. David's letter was sent and whether patients treated at the Jeffersontown office of Bluegrass Chiro had been previously treated at Alliance by Dr. Khani, Dr. David, or both. We note that Dr. Short's deposition had not been previously filed of record as it had only recently been transcribed. It appears that the deposition was taken April 5, 2019 and the court reporter certified that it was fully transcribed as of May 1, 2019.

-14-

while Dr. Khani was on leave, and Dr. David's affidavit stated he operated the Alliance practice by himself after Dr. Khani retired a few months after hiring him. Thus, unless Dr. David's affidavit was controverted by other evidence, there appeared to be a lack of genuine issues of material fact on the tortious interference claim.

Summary judgment was appropriately granted because Dr. Khani did not come forward with proof contradicting Dr. David's affidavit. Instead he relied on speculation alone.

**B.     Negligent Misrepresentation**

In his amended complaint, Dr. Khani alleged that Dr. Short negligently misrepresented unspecified "facts" in the negotiations to purchase the practice. He further alleged Dr. Short "misrepresent[ed] the tax lien to back out of the deal to Dr. Khani." Dr. Khani also alleged that he justifiably relied on Dr. Short's intent to buy the practice so that he did not seek out other potential buyers. Essentially, Dr. Khani claims he relied on the "misrepresentation" about the tax lien which he said led to the practice not being sold and him having to return to work despite his health problems.

Dr. Short's renewed summary judgment motion argued that there was no dispute that it was his bank which produced information that Dr. Khani claims was false and Dr. Short could not be held liable for this third-party act over which

he had no control.  Dr. Khani argued Dr. Short had negligently misrepresented he was going to buy Dr. Khani's business and that the incorrect title opinion should not be used as a defense for Dr. Short to breach the contract.  Dr. Khani's response stated that he "totally relied on Defendants [sic] email that they had accepted the offer at $140,000" and shut down his practice and that he was damaged by Dr. Short's negligence by not receiving the $140,000 he expected to receive for selling his business.

In ruling on the renewed summary judgment motion as to negligent misrepresentation, the trial court relied upon the elements of negligent misrepresentation as provided in *Presnell Construction Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 575, 580 (Ky. 2004):

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

The trial court determined that Dr. Khani could not establish the reliance element of the negligent misrepresentation claim.  The trial court essentially determined that Dr. Khani could not establish the reliance element based on "indisputable evidence" that Dr. Khani did not rely on the information about a lien relayed by Dr. Short's bank.  Instead, it concluded that any reliance on this information was

-16-

by the defendants (Dr. Short and Bluegrass Chiro). And it determined that how the defendants reacted to this information was relevant to the breach of contract claim but had "nothing to do with negligent misrepresentation."

In his CR 59.05 motion as well as his appellate brief, Dr. Khani suggests the trial court misunderstood the nature of the false information he alleged was communicated. He says the title exam came months after the bank's approval and argues that the title exam created a false reason for Dr. Short and Bluegrass Chiro to back out of purchasing his practice. He also points to Dr. Short's promise that he would not open an office in Dr. Khani's area if the practice purchase transaction did not occur but says Dr. Short did open an office in the area with solicitation letters from Dr. David acquired from Dr. Khani's office.

We agree with the trial court that no evidence suggested that Dr. Khani believed or relied on this incorrect title information. Dr. Khani's negligent misrepresentation claim is solely based on the incorrect title information, so he cannot evade summary judgment by raising new allegations not made in the complaint. *Davidson v. Com., Dep't of Military Affairs*, 152 S.W.3d 247, 253 (Ky. App. 2004).

Dr. Khani also has not come forward with any affirmative evidence indicating any impropriety in Dr. Short relying upon the title examination results, even if they were incorrect. As Dr. Short correctly noted, a bank directed the title

exam, over which he had no apparent control. There is no affirmative evidence that the exam was a sham to allow Dr. Short to withdraw from attempting to purchasing Dr. Khani's practice.

In short, we find no error in the trial court's determination that Dr. Short was entitled to summary judgment on the negligent misrepresentation claim.

## C.    Breach of Contract

Dr. Khani alleged in his amended complaint that Dr. Short had breached a contract to buy his practice for $140,000 and that the contract was shown by emails. Dr. Short's renewed summary judgment motion argued entitlement to summary judgment on breach of contract as "Plaintiff has not and cannot offer proofs on any other contractual terms" other than price and that "Plaintiff has failed as a matter of law to establish a 'complete and sufficiently definite' contract with 'full and complete terms,' mandatory elements of this claim."

Dr. Khani's response pointed to a November 3, 2015 email sent by Dr. Short to Dr. Khani stating that Dr. Short would like to accept Dr. Khani's counter-offer to sell his practice for $140,000 and that Dr. Short had obtained approval from the bank as proof that a contract was formed, without explicitly addressing whether other terms were established elsewhere or stating that price

-18-

was the only material term, etc.  Dr. Short's reply construed his response as an admission that the only contract term agreed upon was the purchase price.

Ruling on the renewed motion for summary judgment, the trial court determined that Dr. Short was entitled to summary judgment on this claim because it agreed with him that "the parties never formed a contract to purchase Dr. Khani's practice."  After discussing Kentucky caselaw, particularly *Cinelli v. Ward*, 997 S.W.2d 474 (Ky. App. 1998), the trial court determined that there had been no agreement setting forth all material terms and, thus, no enforceable contract was formed in the parties' email negotiations.  The trial court noted that Dr. Khani claimed that a purchase contract was established by the November 3, 2015 email sent by Dr. Short, which the trial court quoted:

> After talking with Dr. David it is my understanding that you would be willing to sell us your office for $140,000. You have created a following in Fairdale and your office is an asset to Chiropractic.  I would like to accept your counter offer of $140,000 as long as you are still willing to sell for that price?  I got the approval from the bank this morning and therefore I am ready to start the buying process when you are ready.

After this quote, the trial court stated:  "While this document could be construed to constitute a contract standing alone, there are other key documents that must be considered with it."  The trial court noted that in an earlier email sent by Dr. Short on September 4, 2015, he made a conditional offer of $135,000 with three (3) key terms:  1) Dr. Short's receipt of office equipment, charts, and business goodwill; 2)

a covenant not to compete within 25 miles for ten years imposed on Dr. Khani; and 3) Dr. Khani's leasing Dr. Short the building in which the practice was located for a specified price and term.

Reviewing other emails, the trial court determined that Dr. Khani never addressed terms other than purchase price following Dr. Short's September 4 email and that Dr. Short's November 3 email was not a final contract setting forth all material terms:

> Dr. Khani countered with a higher purchase price but never addressed the other terms, which Dr. Short reiterated on September 16, 2015. The negotiations seemed to break down with an email from Dr. Short on September 22, 2015. After more posturing emails, Dr. Short sent the email of November 3, 2015, where he accepted Dr. Khani's offer of $140,000.00. This email was not, however, intended by the parties to be the final contractual document. Dr. Short ended the November 3 email with the phrase "I am ready to start the buying process." What Dr. Short intended by his statement is made crystal clear in an email to Dr. Khani on November 18, 2015, where, among other things, he notes that he has hired an attorney to draft a purchase contract. Dr. Short also stated that he has reviewed the proposed office lease Dr. Khani sent him and noted several material problems he had with some of the terms. On December 3, Dr. Short told Dr. Khani that he would not negotiate the terms of the contract for purchase of the office until the parties had agreed on the terms of the lease. No agreement on the lease was reached, and on December 18, 2015, Dr. Short sent an email to Dr. Khani that halted the "buying process" based on the information regarding the tax liens he received from his bank.

The above emails leave no doubt that there were several material terms that were not agreed upon as they were left to future negotiations that never occurred. *See*, *Cinelli v. Ward*, *supra*, 997 S.W.2d at 477-78. It is also evident that Dr. Short did not intend to enter into a binding contract until his attorney had drafted one suitable to the parties, and he conveyed this fact to Dr. Khani more than once.

In his motion to alter, amend, or vacate, Dr. Khani argued that there was a valid contract with offer, acceptance, and consideration and disputed the trial court's determination that not all material terms had been agreed upon to establish an enforceable contract under *Cinelli*. He also asserted that "additional terms were also outlined by a subsequent email from Dr. Short. *See* Dr. Short Depo. Exhibit 3." From our review of this Exhibit 3, it appears to be the same September 2015 email which the trial court noted stated additional terms along with a conditional offer to purchase the practice for $135,000.

Dr. Khani also argued that the trial court's "bright line" rule would "eviscerate" oral and email contracts where certain details would be worked out later. And he argued there were genuine issues of material fact as to "the import of other terms and conditions, or other key documents to an agreement, and whether they are material terms . . . ." He cited case law holding that if more than one reasonable inference could be drawn from a document, a question should be submitted to a jury. *See Hunter v. Wehr Constructors, Inc.*, 875 S.W.2d 899, 901 (Ky. App. 1999).

Dr. Khani did not discuss any specifics as to what other inferences about terms could be made or based on what documents. He relied upon the September 2015 email containing non-price terms which, as the trial court pointed out, there was no evidence he ever responded to—instead, the record only establishes that the parties agreed to a price term in the November 3, 2015 email. We agree with the trial court that Dr. Short was entitled to summary judgment on the breach of contract claim. Because Dr. Khani failed to present affirmative evidence that he and Dr. Short had agreed to all material terms, summary judgment was appropriately granted.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Teddy B. Gordon
Andrew E. Mize
Peter Jannace
Louisville, Kentucky

BRIEF FOR APPELLEES:

Bradley Guthrie
Harrodsburg, Kentucky